JOHN R. FABRY
*Pro Hac Vice*
JFabry@carlsonattorneys.com
LUIS MUNOZ
*Pro Hac Vice*
LMunoz@carlsonattorneys.com
THE CARLSON LAW FIRM, P.C.
1717 N. Interstate Highway 35, Suite 305
Round Rock, Texas 78664
Telephone: (512) 671-7277
F: (512) 238-0275

ARI MOSS (SBN 238579)
MOSS BOLLINGER, LLP
15300 Ventura Blvd., Ste. 207
Sherman Oaks, California 91403
Telephone: (310) 982-2984
F: (818) 963-5954
Ari@mossbollinger.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, OAKLAND DIVISION

| | |
|---|---|
| Maria Alvarez, Susan Gorme, Ahmed Nikzad, Oliver Rowe, Angela Lazrovich, Steven Lujan, William Caldwell, Paul Herrera, Erica Alvarez, Monika Steinborn, Quan Le, Ethan Bownds, Julius Febre, Kelly Baker, Juanita Gaines, Manuel Delgado, Bascir Smith, Adam Zuniga, Jaspreet Kaur, Eric Toliver, Deitra Jones, Javier Ruiz, Crystal Beauchamp, Genero Vega, John Graham, LaVail Marshall, Andrew Vides, Brandon York, Brian Maloney, Warren Rose, Richard Valerio, Kenneth Ruis, Alicia Brown, Romualdo Castro Jr., Lance Andrew Alan Sunde, Navneet Shergill, Kristina Aguilar, Jeremy Hopcroft, Kelisha Arrington, Gustavo Fiscer, Christopher Mund, Larry Franklin Jr., Andria Bailey, Lisett Martinez, Charley Baskett, Berta Medina, Hector Blanco, Owais Omer, Liliana Molina, Larry Burroughs, Richard Lester, Kevin Carter, Alex Castillo, Jason Helring, Vince Robinson, Michael Coats, Jeffrey Kaner, Lizbeth Eriza, Wesley Lisska, Miguel Enriquez, Sven-Eric Montes, Matthew Guimond, Alfred Hernandez III, Joel Luis, Ivan Ocegueda, Kristi Hernandez, Aaron Gonzalez, | **CASE NO.: 4:19-cv-04079-JSW** <br><br> **SECOND AMENDED COMPLAINT FOR DAMAGES** <br><br> 1.  FRAUD (MISREPRESENTATION) <br><br> 2.  FRAUD (CONCEALMENT) <br><br> 3.  NEGLIGENT MISREPRESENTATION <br><br> 4.  VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT (Cal. Civ. Code §§ 1750, et seq.) <br><br> 5.  UNFAIR COMPETITION (Cal. Bus. & Prof. Code §§ 17200 et seq.) <br><br> 6.  FALSE ADVERTISING (Cal. Bus. & Prof. Code §§ 17500, et seq.) |

Enriqueta Ramirez, William Smith, Mario Marquez, Laurie Jaramillo, John Sanjeev Gagoomal, Francisco Javier Fuentes Cabrera, Tyler Jones, Adriana Marquez, Joseph Klecka, Jasmine Lovett, Robert Saige Jr., Lenore Mallek, Paula Lochray, Arturo Saz, Sajaad Shah, Jennifer Wells, Yi Wang, Brandon Lorenz, Marcos Arroyo, Kevin Scott Wilson, Sheena Todd, Glenn Boucher, Kassandra Peraza, Jose Salvador Zavala, Jonathan Salazar, Angelica Villalobos, Raymond Perez, Nadjib Sandjakedine, Aaron Ruiz, Alex Cortez, Gorge Regalado, Trevor Rosca, Jose Vasquez Baires, Jennifer Nichols, Alicia Cretaro, Shaniqua Raines, Rico Kali-Hayes, Steve Sierra, Monica Ordaz, Jeffrey Parker, Alain Cortave, Amir Awad, Michael Coschigano, Luis Moreno, Jonet Martin,

Plaintiffs,

VS.

ADTALEM GLOBAL EDUCATION, INC. formerly known as DEVRY EDUCATION GROUP, INC.; DEVRY UNIVERSITY, INC.; and DOES 1 through 10

Defendants.

7.   EXEMPLARY DAMAGES
(Cal Civ. Code § 3294)

JURY TRIAL DEMANDED

Hon. Jeffrey S. White

Plaintiffs complain and allege as follows:

## INTRODUCTION

1.   This lawsuit seeks to recover for fraud by misrepresentations, fraud by concealment, negligent misrepresentations, violations of the California Consumer Legal Remedies Act, violations of the California Unfair Competition Law, violations of the California False Advertising Law and Exemplary Damages, against Defendants ADTALEM GLOBAL EDUCATION, INC. ("Defendant Adtalem"), DEVRY UNIVERSITY, INC. ("Defendant DeVry") and DOES 1 through 10 (hereinafter collectively "Defendants"). Defendants misrepresented the benefits of graduating from DeVry University, Inc. Defendants falsely and

1   misleadingly advertised the employment rate and income rate of their graduates to induce potential

2   students to purchase educational products and services, and to remain students through graduation.

3   Plaintiffs relied on these misrepresentations in choosing to purchase educational products and

4   services from DeVry University, Inc.

5       **2.**    Advertisements for DeVry University, Inc. stated, with slight variations, that "90%

6   of DeVry University graduates actively seeking employment obtained careers in their field within

7   six months of graduation…."  This was actually termed "the standard 90% ad" by counsel for

8   Defendants, Alan N. Salpeter, at a hearing held May 2, 2016 on Defendants' motion to dismiss in

9   *Federal Trade Commission v. DeVry Education Group, Inc., et al.,* Case No. 2:16-cv-579, C.D.

10  Cal. Consequently, the various versions of the employment rate representations will be referred to

11  throughout this Complaint as "the Standard 90% Ad" or "the 90% Representation." As explained

12  below, these representations are false and unsubstantiated.

13      **3.**    In addition, Defendants conveyed the message that graduates obtain jobs that pay

14  more than jobs obtained by graduates of other colleges and universities. For instance, Defendants

15  represented that, one year after graduation, DeVry University, Inc. graduates with bachelor's

16  degrees earned 15% more than graduates with bachelor's degrees from all other colleges and

17  universities. This was termed "Defendants' 'higher income claim'" in *Federal Trade Commission*

18  *v. DeVry Education Group, Inc., et al.,* Case No. 2:16-cv-579, C.D. Cal.  The various versions of

19  the higher income claim will be referred to throughout this Complaint as "the Higher Income Ad"

20  or "the Higher Earnings Representation." As explained below, these representations were false and

21  unsubstantiated.

22      **4.**    Plaintiffs make the following allegations pursuant to the investigation of their

23  counsel and based upon information and belief, except as to the allegations specifically pertaining

24  to themselves, which are based on personal knowledge[1].

25

26  [1] Plaintiffs' investigation included requests made under the Freedom of Information Act (FOIA),
    filed with the Federal Trade Commission (FTC) and the U.S. Department of Education (DOE), for

27  documents obtained by these government agencies during their investigations into DeVry
    University's false and deceptive marketing campaign.

28

3

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action under 28 U.S.C. § 1332 as the parties are diverse and the amount in controversy exceeds $75,000.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and pursuant to 28 U.S.C. §1391(d) because Defendants have sufficient contacts with this district to be subject to personal jurisdiction.

## PARTIES

7.     Plaintiff Maria Alvarez was at all relevant times a resident of Salinas, California. Plaintiff enrolled at DeVry in July 2012, paid tuition and associated costs of attending DeVry, and graduated June 28, 2015 with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the DeVry Fremont and San Jose, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately April 2012 through a DeVry recruiter at her high school. Plaintiff also saw DeVry television commercials around this time. Plaintiff recalls the message from the DeVry recruiter and television commercials that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on hearing the 90% Representation from a DeVry recruiter and in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Fremont, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately May 2012 at the DeVry Fremont, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered from the DeVry recruiter and in DeVry television commercials as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on the student portal, on posters around the Fremont and San Jose campuses, and in television commercials, and also encountered Defendants' Higher Income Ad. Plaintiff also relied on this repetition of the 90%

Representation, confirming what she was told before enrolling at DeVry, and the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

8.      Plaintiff Susan Gorme was at all relevant times a resident of Mountain View, California. Plaintiff enrolled at DeVry in May 2014, paid tuition and associated costs of attending DeVry, and graduated on August 30, 2015 with a Bachelor of Science degree in Technical Management, on August 28, 2016 with a Master of Human Resource Management degree, and on April 23, 2017 with a Master of Business Administration degree. Plaintiff attended classes at the DeVry San Jose and Fremont, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately October 2013 in a DeVry television commercial. Plaintiff recalls the message from the DeVry television commercial that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry San Jose, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately January 2014, at the DeVry San Jose, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the DeVry television commercials as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in television commercials and from professors. Plaintiff also relied on this

repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

9.    Plaintiff Ahmed Nikzad was at all relevant times a resident of Hayward, California. Plaintiff enrolled at DeVry in September 2009, paid tuition and associated costs of attending DeVry, and graduated March 2, 2014 with a Bachelor of Science degree in Computer Information Systems. Plaintiff attended classes at the DeVry Fremont and San Jose, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately the winter of 2008, in a DeVry mailer sent to his house. Plaintiff subsequently looked on the DeVry website and also saw the 90% Representation there. Plaintiff recalls the message from the DeVry mailer and website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on seeing the 90% Representation in the DeVry mailer and on the website. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Fremont, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately May 2009, at the DeVry Fremont, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the DeVry mailer and on the DeVry website as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on bulletin boards at the Fremont and San Jose, California campuses. Plaintiff also relied on this repetition of the 90%

Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry in brochures. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**10.**   Plaintiff Oliver Rowe was at all relevant times a resident of Fremont, California. Plaintiff enrolled at DeVry in July 2013, paid tuition and associated costs of attending DeVry, and graduated December 18, 2016 with a Bachelor of Science degree in Multimedia Design and Development. Plaintiff attended classes at the DeVry Fremont and San Jose, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately September 2012, from a DeVry recruiter who visited his high school. The recruiter gave Plaintiff a brochure that included the 90% Representation. Plaintiff recalls the message from the DeVry recruiter and brochure that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation heard from the DeVry recruiter and in the brochure. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Fremont, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately May 2013 at the DeVry Fremont, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation from the DeVry representative and in the brochure as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While

a student at DeVry, Plaintiff continued to encounter the 90% Representation in television commercials and on posters around the Fremont and San Jose, California campus. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**11.**   Plaintiff Angela Lazrovich was at all relevant times a resident of Morgan Hill, California. Plaintiff enrolled at DeVry in the fall of 2009, paid tuition and associated costs of attending DeVry, and graduated October 23, 2011 with an Associate in Web Graphic Design degree. Plaintiff attended classes at the DeVry Fremont and San Jose, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately the summer of 2009, in a DeVry television commercial. Plaintiff recalls the message from the DeVry television commercial that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry San Jose, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately the summer of 2009, at the DeVry San Jose, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in television commercials, on posters at

1   the campuses, in flyers and brochures, and from professors.  Plaintiff also relied on this repetition

2   of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing

3   to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in,

4   her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry

5   if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates

6   who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates

7   who were not employed in their fields of study; (3) Defendants excluded graduates who

8   unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of

9   DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably

10  considered "in their field" is significantly smaller than 90%.

11      **12.**   Plaintiff Steven Lujan was at all relevant times a resident of Hollister, California.

12  Plaintiff enrolled at DeVry in the fall of 2012, paid tuition and associated costs of attending DeVry,

13  and graduated October 22, 2017 with a Bachelor of Science degree in Network and

14  Communications Management. Plaintiff attended classes at the DeVry San Jose and Fremont,

15  California campuses and online. Plaintiff initially encountered Defendants' Standard 90% Ad in

16  approximately 2012, in a DeVry internet pop-up advertisement, in television commercials, and

17  from a recruiter at a job fair. Plaintiff recalls the message from the DeVry internet pop-up

18  advertisements, television commercials, and from the recruiter at a job fair that 90% of DeVry

19  graduates were employed in their field of study within six months of graduation. Plaintiff chose to

20  look into becoming a student at DeVry based on the 90% Representation in DeVry internet pop-

21  up advertisements, television commercials, and from the DeVry recruiter at a job fair. Plaintiff

22  contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry

23  San Jose, California campus. Plaintiff then met with a DeVry representative who reiterated the

24  90% Representation in approximately 2012 at the DeVry San Jose, California campus, during a

25  campus visit. The DeVry representative did not in any way limit or qualify the statement. In

26  reliance on the 90% Representation encountered in the DeVry internet pop-up advertisements,

27  television commercials and from the DeVry recruiter at a job fair as confirmed in the meeting with

28

SECOND AMENDED COMPLAINT FOR DAMAGES                                    4:19-CV-04079-JSW

the DeVry representative, Plaintiff chose to enroll at DeVry.  While a student at DeVry, Plaintiff continued to encounter the 90% Representation in television commercials, brochures, on monitors in halls around the San Jose and Fremont campuses, from academic advisors and faculty members, and during the Career Development Class. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

13.   Plaintiff William Caldwell was at all relevant times a resident of San Jose and Santa Clara, California. Plaintiff enrolled at DeVry in December 2011, paid tuition and associated costs of attending DeVry, and graduated in fall 2013, with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry San Jose, Oakland and Fremont, California campuses. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately November 2011 in a DeVry radio advertisement. Plaintiff recalls the message from the DeVry radio advertisement that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry radio advertisements. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry San Jose, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately December 2011, at the DeVry San Jose, California campus, during a campus visit. In the meeting, the DeVry representative pointed out the 90% Representation in a DeVry flyer. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90%

Representation encountered in DeVry radio advertisements as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in flyers around campus, and also encountered Defendants' Higher Income Ad.  Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, and the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

14.   Plaintiff Paul Herrera was at all relevant times a resident of San Jose, California. Plaintiff enrolled at DeVry in April 2014, paid tuition and associated costs of attending DeVry, and graduated on August 30, 2015 with a Bachelor of Science degree in Technical Management, and on April 23, 2017 with a Master of Business Administration degree from DeVry's Keller Graduate School of Management. Plaintiff attended classes at the DeVry San Jose and Fremont, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately December 2013, in a DeVry television commercial. Plaintiff then looked at the DeVry website and also encountered the 90% Representation there. Plaintiff recalls the message from the DeVry television commercial and on the website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials and on the website. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry San Jose, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately December 2013

SECOND AMENDED COMPLAINT FOR DAMAGES                          4:19-CV-04079-JSW

at the DeVry San Jose, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation in DeVry television commercials and on the website as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation from academic advisors, on posters, in flyers and brochures around the San Jose and Fremont, California campuses, in emails from DeVry, during new student orientation, on the DeVry website and in television commercials, and also encountered Defendants' Higher Income Ad. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, and on the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

15. Plaintiff Erica Alvarez was at all relevant times a resident of Soledad, California. Plaintiff enrolled at DeVry in the summer of 2012, paid tuition and associated costs of attending DeVry, and graduated in December 2015 with a Bachelor of Science degree in Healthcare Administration, and in 2017 with a Master of Healthcare Administration degree from DeVry's Keller Graduate School of Management. Plaintiff attended classes at the DeVry Fremont and San Jose, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2012 through a DeVry recruiter at her high school. Plaintiff also saw DeVry television commercials around this time. Plaintiff recalls the message from the DeVry recruiter and television commercials that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based

SECOND AMENDED COMPLAINT FOR DAMAGES                    4:19-CV-04079-JSW

on hearing the 90% Representation from a DeVry recruiter and in television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Fremont, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately April 2012, at the DeVry Fremont, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered through the DeVry recruiter at her high school and in television commercials as confirmed in the meeting with the DeVry representative at the Fremont campus, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation from professors, from advisors, on posters around the campuses, and in the Career Development class, and also encountered Defendants' Higher Income Ad.  Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, and the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

16.  Plaintiff Monika Steinborn was at all relevant times a resident of San Jose, California. Plaintiff enrolled at DeVry's Keller Graduate School in the spring of 2010, paid tuition and associated costs of attending DeVry, and graduated in April 28, 2013 with a Master of Business Administration degree. Plaintiff attended classes at the DeVry Fremont and San Jose campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately January 2010, in DeVry television commercials and on YouTube. Plaintiff recalls the message from the DeVry television commercials and advertisements on YouTube that 90% of DeVry graduates were

employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials and advertisements on YouTube. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry San Jose, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately January 2010, at the DeVry San Jose, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the DeVry television commercials and advertisements on YouTube as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on poster sized ads in the lobby of the San Jose campus. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

17.   Plaintiff Quan Le was at all relevant times a resident of Milpitas, California. Plaintiff enrolled at DeVry in the spring of 2010, paid tuition and associated costs of attending DeVry, and graduated October 28, 2012 with a Bachelor of Science degree in Technical Management, and June 29, 2014 with a Master of Business Administration degree from DeVry's Keller Graduate School of Management. Plaintiff attended classes at the DeVry San Jose, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2009, in a DeVry radio advertisement. Plaintiff also saw DeVry television

commercials around this time. Plaintiff recalls the message from the DeVry radio advertisements and television commercials that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry radio advertisements and television commercials. Plaintiff contacted DeVry about potentially becoming a student and met with a DeVry representative who reiterated the 90% Representation in approximately September 2009, at the DeVry San Jose, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the DeVry radio advertisements and television commercial as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in emails from DeVry, posters at the San Jose, California campus, on the DeVry website, in television commercials, from advisors, and in the Career Development class. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry.  Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

18.   Plaintiff Ethan Bownds was at all relevant times a resident of Bakersfield, California. Plaintiff enrolled at DeVry in January 2013, paid tuition and associated costs of attending DeVry, and graduated August 30, 2015 with a Bachelor of Science degree in Multimedia Design and Development. Plaintiff attended classes at the DeVry Bakersfield, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately April

or May 2009, from a DeVry recruiter that visited his high school. Plaintiff subsequently encountered the 90% Representation in DeVry television commercials in the fall of 2012. Plaintiff recalls the message from the DeVry recruiter and the television commercials that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on hearing the 90% Representation from a DeVry recruiter and in DeVry television commercials in the fall of 2012. Plaintiff contacted DeVry about potentially becoming a student after seeing the television commercials, and remembering back to his interaction with the DeVry recruiter at his high school, and scheduled an appointment at the DeVry Bakersfield, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately December 2012, at the DeVry Bakersfield, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered from the DeVry recruiter and the DeVry television commercials as confirmed in the meeting with the DeVry representative on the DeVry Bakersfield campus, Plaintiff chose to enroll at DeVry. Plaintiff continued to encounter the 90% Representation in television commercials and verbally from multiple professors, and also encountered Defendants' Higher Income Ad. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, and the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

19.    Plaintiff Julius Febre was at all relevant times a resident of Stockton, California. Plaintiff enrolled at DeVry in August 31, 2015, paid tuition and associated costs of attending

DeVry, and graduated in June 25, 2017, with a Bachelor of Science degree in Technical Management. Plaintiff attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2015 from a DeVry recruiter.  Plaintiff then looked on the DeVry website and encountered the Standard 90% Ad there. Plaintiff recalls the message from the DeVry recruiter and website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation from a DeVry recruiter and on the website. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Fremont, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately 2015, at the DeVry Fremont, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered from a DeVry recruiter and on the DeVry website as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on the DeVry website, and also encountered Defendants' Higher Income Ad. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, and on the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

  **20.** Plaintiff Kelly Baker was at all relevant times a resident of Fresno and Madera, California. Plaintiff enrolled at DeVry in the July 2010, paid tuition and associated costs of attending DeVry, and graduated October 28, 2012 with a Bachelor of Science degree in Technical

Management, and December 21, 2014 with a Master of Business Administration degree from DeVry's Keller Graduate School of Management. Plaintiff attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately April 2010 in DeVry radio and television advertisements. Plaintiff looked at the DeVry website and also encountered the 90% Representation there. Plaintiff recalls the message from DeVry radio and television advertisements, and the website, that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation in DeVry radio and television advertisements, and on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Fresno, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation on April 29, 2010 at the DeVry Fresno, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the DeVry radio and television advertisements, and on the website, as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in emails, radio and television advertisements and the student web portal.  Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**21.**   Plaintiff Juanita Gaines was at all relevant times a resident of Bakersfield,

SECOND AMENDED COMPLAINT FOR DAMAGES                    4:19-CV-04079-JSW

California. Plaintiff enrolled at DeVry on March 2, 2009, paid tuition and associated costs of attending DeVry, and graduated on February 27, 2011 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry Bakersfield, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately early 2009 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on seeing the 90% Representation on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Bakersfield, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately early 2009, at the DeVry Bakersfield, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on posters, in flyers and pamphlets, and from career advisors. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

      **22.**    Plaintiff Manuel Delgado was at all relevant times a resident of Fresno, California. Plaintiff enrolled at DeVry in 2013, paid tuition and associated costs of attending DeVry, and graduated in 2017 with a Bachelor of Science degree in Network Communications Management.

SECOND AMENDED COMPLAINT FOR DAMAGES          4:19-CV-04079-JSW

Plaintiff attended classes at the DeVry Fresno campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2013 through a DeVry counselor at the Fresno, California campus. Plaintiff was visiting colleges to check them out before deciding where to apply. Plaintiff recalls the message from the DeVry counselor that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff was interested in attending DeVry, but believed that he would need health insurance to enroll. A DeVry representative called Plaintiff after he visited the Fresno campus, informed Plaintiff that he would not need health insurance to enroll at DeVry, and asked Plaintiff to return to the Fresno campus for a meeting.  Plaintiff chose to look further into becoming a student at DeVry based on hearing the 90% Representation from the DeVry counselor. Plaintiff went back to the DeVry Fresno campus for a scheduled appointment to discuss potentially becoming a student. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately 2013, at the DeVry Fresno, California campus. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered from the DeVry counselor as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation from DeVry counselors and advisors, also encountered Defendants' Higher Income Ad.  Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, and on the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**23.**   Plaintiff Bascir Smith was at all relevant times a resident of Delano, California.

Plaintiff enrolled at DeVry in August 2014, paid tuition and associated costs of attending DeVry, and graduated June 26, 2016 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately July 2014 in a DeVry television commercial. Plaintiff recalls the message from the DeVry television commercial that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in a DeVry television commercial. Plaintiff then met with a DeVry representative at his college campus, and then talked with another DeVry representative over the phone, who reiterated the 90% Representation in approximately July 2014. The DeVry representatives did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed in the meeting and telephone call with DeVry representatives, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on television commercials. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student on DeVry television commercials. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

    **24.** Plaintiff Adam Zuniga was at all relevant times a resident of Bakersfield, California. Plaintiff enrolled at DeVry in April 2014, paid tuition and associated costs of attending DeVry, and graduated June 26, 2016 with a Bachelor of Science degree in Technical Management.

SECOND AMENDED COMPLAINT FOR DAMAGES          4:19-CV-04079-JSW

Plaintiff attended classes at the DeVry Bakersfield, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately early 2014 in a DeVry Facebook advertisement.   Plaintiff also encountered Defendants' Standard 90% Ad on billboards, in television commercials and radio advertisements around the same time frame. Plaintiff recalls the message from the DeVry Facebook advertisements, billboards, television commercials and radio advertisements that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry Facebook advertisements, on billboards, in television commercials and in radio advertisements. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Bakersfield, California Campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately April 2014, at the DeVry Bakersfield, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the DeVry Facebook advertisements, billboards, television commercials, and radio advertisements as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation from Student Success Coaches and during the Career Development class, and also encountered Defendants' Higher Income Ad. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, and on the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

25.   Plaintiff Jaspreet Kaur was at all relevant times a resident of Fresno and Anaheim, California. Plaintiff enrolled at DeVry in January 2011, paid tuition and associated costs of attending DeVry, and graduated June 30, 2013 with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the DeVry Anaheim and Fresno, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately November 2010 in a DeVry Facebook advertisement.  Plaintiff subsequently encountered Defendants' Standard 90% Ad in a radio advertisement, also in approximately November 2010. Plaintiff recalls the message from DeVry Facebook and radio advertisements that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry Facebook and radio advertisements. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Fresno, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately December 2010 at the DeVry Fresno, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation in DeVry Facebook and radio advertisements as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in posters and flyers around the Fresno, California campus, in radio advertisements, in television commercials, in emails from DeVry, in Facebook advertisements, from Career Services representatives, from advisors and recruiters she worked alongside as a student worker for DeVry, and in the Career Development course.  Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who

1   unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of

2   DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably

3   considered "in their field" is significantly smaller than 90%.

4          26.    Plaintiff Eric Toliver was at all relevant times a resident of Sacramento, California.

5   Plaintiff enrolled at DeVry in April 2010, paid tuition and associated costs of attending DeVry,

6   and graduated September 1, 2013 with a Bachelor of Science degree in Technical Management.

7   Plaintiff attended classes at the DeVry Elk Grove campus and online. Plaintiff initially encountered

8   Defendants' Standard 90% Ad in approximately February 2010, on the DeVry website. Plaintiff

9   recalls the message from the DeVry website that 90% of DeVry graduates were employed in their

10  field of study within six months of graduation. Plaintiff chose to look further into becoming a

11  student at DeVry based on seeing the 90% Representation on the DeVry website. Plaintiff

12  contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry

13  Elk Grove, California campus. Plaintiff then met with a DeVry representative who reiterated the

14  90% Representation in approximately April 2010, at the DeVry Elk Grove, California campus

15  during a campus visit. The DeVry representative did not in any way limit or qualify the statement.

16  In reliance on the 90% Representation encountered on the DeVry website as confirmed in the

17  meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at

18  DeVry, Plaintiff continued to encounter the 90% Representation in posters around the campus, and

19  from advisors. Plaintiff also relied on this repetition of the 90% Representation, confirming what

20  he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively

21  sought employment in, and did not obtain a job in, his field within six months of graduation from

22  DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the

23  Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior

24  to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of

25  study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after

26  graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time

27  they graduated, found jobs that could be reasonably considered "in their field" is significantly

28

smaller than 90%.

27.   Plaintiff Deitra Jones was at all relevant times a resident of Merced, California. Plaintiff enrolled at DeVry in August 2009, paid tuition and associated costs of attending DeVry, and graduated February 26, 2012 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry Fresno, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately February 2009 in a DeVry television commercial. Plaintiff then looked at the DeVry website and also saw the 90% Representation there. Plaintiff recalls the message from the DeVry television commercial and website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation in DeVry television commercials and on the website. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Fresno, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately August 2009 at the DeVry Fresno, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials and on the website as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on posters in the halls around the Fresno, California campus, and in the Career Center. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered

"in their field" is significantly smaller than 90%.

28.     Plaintiff Javier Ruiz was at all relevant times a resident of San Carlos, California. Plaintiff enrolled at DeVry's Keller Graduate School of Management in November 2011, paid tuition and associated costs of attending DeVry, and graduated December 22, 2013 with a Master of Business Administration degree, and October 26, 2014 with a Master of Project Management degree. Plaintiff attended classes at the DeVry Fremont and Daly City, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately the fall of 2011, on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. After visiting the DeVry website, Plaintiff was contacted by a DeVry representative about potentially becoming a student and scheduled an appointment at the DeVry Fremont, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately October 2011, at the DeVry Fremont, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in television commercials, from advisors and counselors, on the DeVry website, in internet pop-up advertisements, and on billboards. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

SECOND AMENDED COMPLAINT FOR DAMAGES                                    4:19-CV-04079-JSW

29. Plaintiff Crystal Beauchamp was at all relevant times a resident of Bakersfield, California. Plaintiff enrolled at DeVry in the summer of 2010, paid tuition and associated costs of attending DeVry, and graduated on December 23, 2012 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry Bakersfield campus. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately March 2010, in a DeVry flyer that came into her workplace. Plaintiff looked at the DeVry website and also encountered the 90% Representation there. Plaintiff also saw DeVry television commercials around this time. Plaintiff recalls the message from the DeVry flyer that came into her workplace, from the DeVry website, and the television commercials, that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on seeing the 90% Representation in the DeVry flyer, on the website, and in television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Bakersfield, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately April or May 2010 at the DeVry Bakersfield, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the DeVry flyer, on the DeVry website, and in DeVry television commercials as confirmed by the DeVry representative in April or May 2010, Plaintiff chose to enroll at DeVry. Plaintiff continued to encounter the 90% Representation while a student at DeVry. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be

1   reasonably considered "in their field" is significantly smaller than 90%.

2   **30.**   Plaintiff Genero Vega was at all relevant times a resident of Fresno, California.

3   Plaintiff enrolled at DeVry in October 2012, paid tuition and associated costs of attending DeVry,

4   and graduated in June 2017 with a Bachelor of Science degree in Technical Management. Plaintiff

5   attended classes at the DeVry Fresno campus and online. Plaintiff initially encountered

6   Defendants' Standard 90% Ad in approximately the spring of 2012, in a DeVry television

7   commercial. Plaintiff recalls the message from the DeVry television commercial that 90% of

8   DeVry graduates were employed in their field of study within six months of graduation. Plaintiff

9   chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry

10  television commercials. Plaintiff contacted DeVry about potentially becoming a student and

11  scheduled an appointment at the DeVry Fresno, California campus. Plaintiff then met with a

12  DeVry representative who reiterated the 90% Representation in approximately the spring of 2012,

13  at the DeVry Fresno, California campus, during a campus visit. The DeVry representative did not

14  in any way limit or qualify the statement. In reliance on the 90% Representation encountered in

15  DeVry television commercials as confirmed in the meeting with the DeVry representative, Plaintiff

16  chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90%

17  Representation on posters around campus.  Plaintiff also relied on this repetition of the 90%

18  Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a

19  student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at

20  DeVry on brochures. Plaintiff also relied on the Higher Income Ad in choosing to remain a student

21  at DeVry.  Plaintiff actively sought employment in, and did not obtain a job in, his field within six

22  months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known

23  that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with

24  the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not

25  employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully

26  attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry

27  graduates who, at or near the time they graduated, found jobs that could be reasonably considered

28

"in their field" is significantly smaller than 90%.

31.    Plaintiff John Graham was at all relevant times a resident of Fremont, California. Plaintiff enrolled at DeVry in the fall of 2008, paid tuition and associated costs of attending DeVry, and graduated on February 26, 2012 with a Bachelor of Science degree in Game and Simulation Programming. Plaintiff attended classes at the DeVry Fremont, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately April 2008, from a DeVry recruiter who came to his high school. Plaintiff recalls the message from the DeVry recruiter that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on hearing the 90% Representation from the DeVry recruiter. Plaintiff gave his email address and phone number to the DeVry recruiter. DeVry contacted Plaintiff about potentially becoming a student and scheduled an appointment at the DeVry Fremont, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately August 2008, at the DeVry Fremont, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered from the DeVry recruiter as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation from financial advisors, academic advisors, career counselors, on the DeVry Website, on posters around campus and in the dormitories, and from professors in classes. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably

29

considered "in their field" is significantly smaller than 90%.

32.    Plaintiff LaVail Marshall was at all relevant times a resident of Fairfield, California. Plaintiff enrolled at DeVry in the spring of 2012, paid tuition and associated costs of attending DeVry, and graduated February 26, 2017 with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the DeVry Fremont, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2010, in a DeVry television commercial. Plaintiff recalls the message from the DeVry television commercial that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Fremont, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately early 2012, at the DeVry Fremont, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on posters at the Fremont campus and on social media. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

33.    Plaintiff Andrew Vides was at all relevant times a resident of Walnut Creek,

California. Plaintiff enrolled at DeVry in the spring of 2010, paid tuition and associated costs of attending DeVry, and graduated June 24, 2012 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry Fresno and Oakland campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2010, in a DeVry television commercial. Plaintiff recalls the message from the DeVry the television commercial that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry television commercials. Plaintiff spoke with a DeVry counselor who was a friend of the person Plaintiff was dating at the time. The DeVry counselor gave Plaintiff a brochure that contained the 90% Representation and reiterated the 90% Representation in approximately 2010. The DeVry counselor did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the DeVry television commercials and brochure as confirmed by the DeVry counselor, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on the DeVry website, in television commercials, and on posters on the campuses.  Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

    **34.**   Plaintiff Brandon York was at all relevant times a resident of Fremont, California. Plaintiff enrolled at DeVry in August 2009, paid tuition and associated costs of attending DeVry, and graduated in February 26, 2012 with a Bachelor of Science degree in Game and Simulation

Programming. Plaintiff attended classes at the DeVry Fremont campus. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately the summer of 2009 from a DeVry recruiter. Plaintiff recalls the message from the DeVry recruiter that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation related by the DeVry recruiter. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment for a representative to meet with him at his workplace. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately the summer of 2009 at his workplace in Fremont, California. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered from the DeVry recruiter as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in television advertisements around campus. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

35.    Plaintiff Brian Maloney was at all relevant times a resident of Fremont, California. Plaintiff enrolled at DeVry in 2010, paid tuition and associated costs of attending DeVry, and graduated in 2012, with an Associate in Network Systems Administration degree. Plaintiff attended classes at the DeVry Fremont campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2010, in a DeVry television commercial and in a

SECOND AMENDED COMPLAINT FOR DAMAGES                                    4:19-CV-04079-JSW

radio advertisement in the same time frame. Plaintiff recalls the message from the DeVry television commercial and radio advertisement that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry television commercials and radio advertisements. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Fremont, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately 2010, at the DeVry Fremont, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the DeVry television commercials and radio advertisements as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation from advisors, in television commercials, and in radio advertisements. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

    36.    Plaintiff Warren Rose was at all relevant times a resident of San Jose, California. Plaintiff enrolled at DeVry's Keller Graduate School of Management in the fall of 2009, paid tuition and associated costs of attending DeVry, and graduated September 2, 2012 with a Master of Business Administration degree, and December 22, 2013 with a Master of Accounting and Financial Management degree. Plaintiff attended classes at the DeVry Fremont, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately the

summer of 2009, on the DeVry website and in YouTube advertisements. Plaintiff recalls the message from the DeVry website and YouTube advertisements that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation on the DeVry website and in YouTube advertisements. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry San Jose, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation on November 21, 2009 at the DeVry San Jose, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website and in YouTube advertisements as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on flyers around the Fremont, California campus, from counselors and faculty members. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

37.   Plaintiff Richard Valerio was at all relevant times a resident of Union City, California. Plaintiff enrolled at DeVry in the fall of 2011, paid tuition and associated costs of attending DeVry, and graduated June 26, 2016 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry Colton, Pomona, and Long Beach campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately

34

November 2012, in DeVry television commercials. Plaintiff also encountered the 90% Representation in DeVry radio advertisements and in online advertisements on YouTube. Plaintiff recalls the message from the DeVry television commercials, radio advertisements and online advertisements, that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry television commercials, radio advertisements, and on online advertisements. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Fremont, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately November 2012, at the DeVry Fremont, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry television commercials, radio advertisements and on online advertisements as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation from DeVry counselors, on posters and flyers around the campuses, in radio and television advertisements, and also encountered Defendants' Higher Income Ad. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, and on the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

38.    Plaintiff Kenneth Ruis was at all relevant times a resident of San Francisco, California. Plaintiff enrolled at DeVry in the fall of 2008, paid tuition and associated costs of

SECOND AMENDED COMPLAINT FOR DAMAGES                                    4:19-CV-04079-JSW

attending DeVry, and graduated June 26, 2011 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry Daly City, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately July 2008 in a telephone call from a DeVry recruiter. Plaintiff recalls the message from the DeVry recruiter that 90% of DeVry graduates were employed in their field of study within six months of graduation. The recruiter invited Plaintiff to visit the DeVry Daly City, California campus. Plaintiff chose to look into becoming a student at DeVry based on hearing the 90% Representation from a DeVry recruiter. When Plaintiff arrived on campus, he saw posters with the 90% Representation. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately July 2008, at the DeVry Daly City, California campus during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation from the DeVry recruiter and on the posters on the Daly City campus as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on posters at the Daly City, California campus, the online student portal, in radio advertisements, in television commercials, from counselors, and in the Career Development class. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

39. Plaintiff Alicia Brown was at all relevant times a resident of Sacramento, California. Plaintiff enrolled at DeVry in May 2010, paid tuition and associated costs of attending

DeVry, and graduated October 28, 2012 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry Elk Grove, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately March or April of 2010 in a DeVry television commercial. Plaintiff recalls the message from DeVry television commercial that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Elk Grove campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately May 2010, at the DeVry Elk Grove, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation from advisors, in television commercials, on the DeVry website, in emails from DeVry, and from professors. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

    **40.** Plaintiff Romualdo Castro Jr. was at all relevant times a resident of West Sacramento, California. Plaintiff enrolled at DeVry in the summer of 2008, paid tuition and associated costs of attending DeVry, and graduated October 23, 2011 with a Bachelor of Science

degree in Technical Management. Plaintiff attended classes at the DeVry Elk Grove, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2008 from a DeVry recruiter. The recruiter showed Plaintiff a brochure with the 90% Representation. Plaintiff recalls the message from the DeVry recruiter and the brochure that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation from a DeVry recruiter and in the brochure. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Elk Grove, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately 2008 at the DeVry Elk Grove, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation from the DeVry recruiter and brochure as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in the Career Development class, on flyers around campus, on the DeVry website, and from DeVry career advisors. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**41.** Plaintiff Lance Andrew Alan Sunde was at all relevant times a resident of Fremont, California. Plaintiff enrolled at DeVry in June 2012, paid tuition and associated costs of attending DeVry, and graduated in November 2016 with a Bachelor of Science degree in Computer

Engineering Technology. Plaintiff attended classes at the DeVry Fremont campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2010 and 2011, while still a sophomore in high school, in DeVry television commercials. Plaintiff also encountered the 90% Representation in advertisements on YouTube and Facebook. In 2012, a DeVry recruiter came to Plaintiff's high school and gave Plaintiff a brochure that included the 90% Representation. Plaintiff looked at the DeVry website and also encountered the 90% Representation there. Plaintiff recalls the message from the DeVry television commercials, advertisements on YouTube and Facebook, from the DeVry recruiter and in the brochure, and on the DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry television commercials, advertisements on YouTube and Facebook, from the DeVry recruiter and in the brochure, and on the DeVry website. Plaintiff had several meetings with DeVry representatives who reiterated the 90% Representation, including a final meeting in approximately May 2011, at the DeVry Fremont, California campus, during a campus visit. The DeVry representatives did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials, advertisements on YouTube and Facebook, from the DeVry recruiter, in the DeVry brochure, and on the DeVry website as confirmed in the meetings with DeVry representatives, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation from DeVry advisors, in the Career Development class, on the DeVry student portal, on the DeVry Website, in social media advertisements, in DeVry television commercials, on monitors in the halls on campus, in pamphlets, and on computer screensavers and backgrounds at the campus, and also encountered Defendants' Higher Income Ad.  Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, and on the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates

SECOND AMENDED COMPLAINT FOR DAMAGES                                    4:19-CV-04079-JSW

1   who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates

2   who were not employed in their fields of study; (3) Defendants excluded graduates who

3   unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of

4   DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably

5   considered "in their field" is significantly smaller than 90%.

6          **42.**    Plaintiff Navneet Shergill was at all relevant times a resident of Tracy, California.

7   Plaintiff enrolled at DeVry in March of 2009, paid tuition and associated costs of attending DeVry,

8   and graduated in 2010 with a Bachelor of Science degree in Technical Management, and in 2013

9   with a Master of Accounting degree from DeVry's Keller Graduate School of Management.

10  Plaintiff attended classes at the DeVry Elk Grove campus and online. Plaintiff initially encountered

11  Defendants' Standard 90% Ad in approximately 2009, in a DeVry television commercial. Plaintiff

12  recalls the message from the DeVry television commercial that 90% of DeVry graduates were

13  employed in their field of study within six months of graduation. Plaintiff chose to look into

14  becoming a student at DeVry based on seeing the 90% Representation in the DeVry television

15  commercial. Plaintiff contacted DeVry about potentially becoming a student and scheduled an

16  appointment at the DeVry Elk Grove, California campus. Plaintiff then met with a DeVry

17  representative who reiterated the 90% Representation in approximately February 2009, at the

18  DeVry Elk Grove, California campus during a campus visit. The DeVry representative did not in

19  any way limit or qualify the statement. In reliance on the 90% Representation encountered in

20  DeVry television commercials as confirmed in the meeting with the DeVry representative, Plaintiff

21  chose to enroll at DeVry.  While a student at DeVry, Plaintiff continued to encounter the 90%

22  Representation in television commercials. Plaintiff also relied on this repetition of the 90%

23  Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a

24  student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field

25  within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she

26  had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who

27  continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who

28

SECOND AMENDED COMPLAINT FOR DAMAGES                                    4:19-CV-04079-JSW

1   were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully

2   attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry

3   graduates who, at or near the time they graduated, found jobs that could be reasonably considered

4   "in their field" is significantly smaller than 90%.

5       **43.**   Plaintiff Kristina Aguilar was at all relevant times a resident of Lancaster,

6   California. Plaintiff enrolled at DeVry in December 2010, paid tuition and associated costs of

7   attending DeVry, and graduated in August 2014 with a Bachelor of Science degree in Business

8   Administration. Plaintiff attended classes at the DeVry Palmdale campus and online. Plaintiff

9   initially encountered Defendants' Standard 90% Ad in approximately August 2010 in television

10  commercials, and then during a DeVry presentation at the Palmdale campus. Plaintiff recalls the

11  message from the DeVry television commercials and during the presentation that 90% of DeVry

12  graduates were employed in their field of study within six months of graduation. Plaintiff chose to

13  look further into becoming a student at DeVry based on the 90% Representation in DeVry

14  television commercials and in the presentation. Plaintiff contacted DeVry about potentially

15  becoming a student, and scheduled an appointment at the DeVry Palmdale, California campus.

16  Plaintiff then met with a DeVry representative who reiterated the 90% Representation in

17  approximately December 2010, at the DeVry Palmdale, California campus, during a campus visit.

18  The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90%

19  Representation encountered in DeVry television commercials and the presentation at the Palmdale

20  campus as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at

21  DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in

22  television commercials and the Career Development class, and also encountered Defendants'

23  Higher Income Ad. Plaintiff also relied on this repetition of the 90% Representation, confirming

24  what she was told before enrolling at DeVry, and the Higher Income Ad, in choosing to remain a

25  student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field

26  within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she

27  had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who

28

1   continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who
2   were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully
3   attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry
4   graduates who, at or near the time they graduated, found jobs that could be reasonably considered
5   "in their field" is significantly smaller than 90%.

6   **44.**   Plaintiff Jeremy Hopcroft was at all relevant times a resident of Hollister,
7   California. Plaintiff enrolled at DeVry in the September of 2009, paid tuition and associated costs
8   of attending DeVry, and graduated on June 28, 2015 with a Bachelor of Science degree in Network
9   and Communications Management. Plaintiff attended classes online. Plaintiff initially encountered
10  Defendants' Standard 90% Ad in approximately 2009, in a DeVry pamphlet that was distributed
11  by a DeVry recruiter at his high school. Plaintiff recalls the message from the DeVry pamphlet
12  that 90% of DeVry graduates were employed in their field of study within six months of
13  graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90%
14  Representation in the DeVry pamphlet. Plaintiff contacted DeVry about potentially becoming a
15  student and scheduled an appointment at Plaintiffs' home in Hollister, California. A DeVry
16  representative reiterated the 90% Representation in approximately after high school graduation in
17  2009 at Plaintiffs' home in Hollister, California, during a scheduled appointment. The DeVry
18  representative did not in any way limit or qualify the statement. In reliance on the 90%
19  Representation in the DeVry pamphlet as confirmed in the meeting with the DeVry representative,
20  Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the
21  90% Representation on the DeVry website, and also encountered Defendants' Higher Income Ad.
22  Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told
23  before enrolling at DeVry, and also relied on the Higher Income Ad, in choosing to remain a
24  student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field
25  within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had
26  known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who
27  continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who
28

42

1   were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully

2   attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry

3   graduates who, at or near the time they graduated, found jobs that could be reasonably considered

4   "in their field" is significantly smaller than 90%.

5       **45.**   Plaintiff Kelisha Arrington was at all relevant times a resident of Rancho

6   Cucamonga, California. Plaintiff enrolled at DeVry in the fall of 2011, paid tuition and associated

7   costs of attending DeVry, and graduated October 26, 2014 with a Bachelor of Science degree in

8   Network and Communications Management, and graduated August 30, 2015 with a Master of

9   Human Resource Management degree from DeVry's Keller Graduate School of Management.

10  Plaintiff attended classes at the DeVry Long Beach and Pomona, California campuses, and online.

11  Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2011, in a DeVry

12  television commercial. Plaintiff then looked at the DeVry website and also encountered the 90%

13  Representation there. Plaintiff recalls the message from DeVry television commercials and the

14  website that 90% of DeVry graduates were employed in their field of study within six months of

15  graduation. Plaintiff chose to look further into becoming a student at DeVry based on seeing the

16  90% Representation in DeVry television commercials and on the website. Plaintiff contacted

17  DeVry about potentially becoming a student and scheduled an appointment at the DeVry Pomona,

18  California campus. Plaintiff then met with a DeVry representative who reiterated the 90%

19  Representation in approximately October 2011 at the DeVry Pomona, California campus, during

20  a campus visit. The DeVry representative did not in any way limit or qualify the statement. In

21  reliance on the 90% Representation encountered in the DeVry television commercials and on the

22  website as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at

23  DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in

24  emails from advisors and in Facebook advertisements, and also encountered Defendants' Higher

25  Income Ad.  Plaintiff also relied on this repetition of the 90% Representation, confirming what she

26  was told before enrolling at DeVry, and the Higher Income Ad, in choosing to remain a student at

27  DeVry.  Plaintiff actively sought employment in, and did not obtain a job in, her field within six

28

months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

46. Plaintiff Gustavo Fiscer was at all relevant times a resident of Palmdale, California. Plaintiff enrolled at DeVry in summer 2009, paid tuition and associated costs of attending DeVry, and graduated in September 2013 with a Bachelor of Science degree in Computer Science. Plaintiff attended classes at the DeVry Palmdale campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2008 through an enrollment advisor when his wife was enrolling at the DeVry Palmdale campus. Plaintiff recalls the message from the DeVry enrollment advisor that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry himself based on the 90% Representation from the DeVry enrollment advisor. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Palmdale, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately June 2008 at the DeVry Palmdale, California campus during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered through the DeVry enrollment advisor as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in DeVry television advertisements, on school monitors around the Palmdale campus, from academic advisors, and in DeVry brochures, and also encountered Defendants' Higher Income Ad. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, and also relied on the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought

employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**47.**    Plaintiff Christopher Mund was at all relevant times a resident of Lancaster, California. Plaintiff enrolled at DeVry in the fall of 2010, paid tuition and associated costs of attending DeVry, and graduated in August 31, 2014 with an Associate of Electronics and Computer Technology degree. Plaintiff attended classes at the DeVry Palmdale, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately the summer of 2010, in a DeVry television commercial. Plaintiff recalls the message from the DeVry television commercial that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Palmdale, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately the summer of 2010, at the DeVry Palmdale, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in posters around campus, as well as from administrators. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry in brochures, and DeVry television advertisements. Plaintiff also relied on the Higher Income Ad in choosing to remain a

student at DeVry.  Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

48.    Plaintiff Larry Franklin Jr. was at all relevant times a resident of Los Angeles, California. Plaintiff enrolled at DeVry in 2010, paid tuition and associated costs of attending DeVry, and graduated April 28, 2013 with a Bachelor of Science degree in Technical Management, and June 26, 2016 with a Master's of Business Administration degree from DeVry's Keller Graduate School of Management. Plaintiff attended classes at the DeVry Pomona and Alhambra, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2010, in a DeVry television commercial. Plaintiff looked at the DeVry website and also saw the 90% Representation there. Plaintiff recalls the message from DeVry television commercials and website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation in television commercials and on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Alhambra, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately August 2010 at the DeVry Alhambra, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials and on the DeVry website as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on the DeVry website, on posters around campus, from counselors and advisors, in DeVry television

commercials, and during the Career Development class. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

49.   Plaintiff Andria Bailey was at all relevant times a resident of Riverside, California. Plaintiff enrolled at DeVry in the summer of 2010, paid tuition and associated costs of attending DeVry, and graduated April 27, 2014 with an Associate of Applied Science in Health Information Technology degree. Plaintiff attended classes at the DeVry Colton and Pomona, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately the spring of 2010, in a DeVry television commercial. Plaintiff recalls the message from DeVry television commercials that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Colton, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately early summer 2010, at the DeVry Colton, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry.  While a student at DeVry, Plaintiff continued to encounter the 90% Representation on posters and television monitors around campus, and also encountered Defendants' Higher Income Ad. Plaintiff also

1  relied on this repetition of the 90% Representation, confirming what she was told before enrolling

2  at DeVry, and the Higher Income Ad, in choosing to remain a student at DeVry.  Plaintiff actively

3  sought employment in, and did not obtain a job in, her field within six months of graduation from

4  DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the

5  Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior

6  to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of

7  study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after

8  graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time

9  they graduated, found jobs that could be reasonably considered "in their field" is significantly

10  smaller than 90%.

11       **50.**     Plaintiff Lisset Martinez was at all relevant times a resident of Palmdale, California.

12  Plaintiff enrolled at DeVry in the fall of 2008, paid tuition and associated costs of attending DeVry,

13  and graduated December 23, 2012 with an Associate in Network Systems Administration degree.

14  Plaintiff attended classes at the DeVry Palmdale, California campus and online. Plaintiff initially

15  encountered Defendants' Standard 90% Ad in approximately summer 2008, on the DeVry website.

16  Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed

17  in their field of study within six months of graduation. Plaintiff chose to look further into becoming

18  a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff contacted

19  DeVry about potentially becoming a student and scheduled an appointment at the DeVry Palmdale,

20  California campus. Plaintiff then met with a DeVry representative who reiterated the 90%

21  Representation in approximately fall 2008 at the DeVry Palmdale, California campus during a

22  campus visit. The DeVry representative did not in any way limit or qualify the statement. In

23  reliance on the 90% Representation encountered on the DeVry website as confirmed in the meeting

24  with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry,

25  Plaintiff continued to encounter the 90% Representation in brochures and posters around the

26  Palmdale, California campus, and on the DeVry website. Plaintiff also relied on this repetition of

27  the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to

28

remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**51.** Plaintiff Charley Baskett was at all relevant times a resident of Lemon Grove, California. Plaintiff enrolled at DeVry May 6, 2013, paid tuition and associated costs of attending DeVry, and graduated June 26, 2016 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry San Diego campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately January 2013 in a DeVry Facebook advertisement. Plaintiff looked at the DeVry website and also encountered the 90% Representation there. Plaintiff also attended a career fair and received a DeVry brochure. Plaintiff recalls the message from the DeVry Facebook advertisement, website, and brochure that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on seeing the 90% Representation in DeVry Facebook advertisements, on the website, and in the brochure. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry San Diego, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately March 2013, at the DeVry San Diego, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in Facebook advertisements, on the DeVry website, and in the brochure as confirmed by the DeVry representative in the March 2013 meeting, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation from a professor, from a representative for DeVry, in flyers, and in Facebook

advertisements, and also encountered Defendants' Higher Income Ad.  Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, and the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

52.   Plaintiff Berta Medina was at all relevant times a resident of Lancaster, California. Plaintiff enrolled at DeVry in the June 2009, paid tuition and associated costs of attending DeVry, and graduated September 1, 2013 with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the DeVry Palmdale, California campus. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately May 2009, in a DeVry television commercial. Plaintiff recalls the message from the DeVry television commercial that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Palmdale, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately May 2009, at the DeVry Palmdale, California campus during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on television monitors, flyers and posters at the Palmdale, California campus and television commercials. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told

before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

53.   Plaintiff Hector Blanco was at all relevant times a resident of Los Angeles, California. Plaintiff enrolled at DeVry in November 2010, paid tuition and associated costs of attending DeVry, and graduated December 22, 2013 with a Bachelor of Science degree. Plaintiff attended classes at the DeVry Sherman Oaks, Pomona and Long Beach, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately November or December 2009 in a DeVry Facebook advertisement. Plaintiff also encountered DeVry television commercials and radio advertisements around this time. Plaintiff recalls the message from the DeVry Facebook advertisement, television commercials and radio advertisements that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry Facebook advertisements, television commercials and radio advertisements. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Sherman Oaks, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately October 2010 at the DeVry Sherman Oaks, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry Facebook advertisements, television commercials and radio advertisements as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry.   While a student at DeVry, Plaintiff continued to encounter the 90% Representation in television commercials and posted on bulletin boards in

SECOND AMENDED COMPLAINT FOR DAMAGES                                           4:19-CV-04079-JSW

1    offices on campus. Plaintiff also relied on this repetition of the 90% Representation, confirming

2    what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff

3    actively sought employment in, and did not obtain a job in, his field within six months of

4    graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order

5    to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs

6    they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in

7    their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs

8    after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the

9    time they graduated, found jobs that could be reasonably considered "in their field" is significantly

10   smaller than 90%.

11        **54.**   Plaintiff Owais Omer was at all relevant times a resident of Sherman Oaks,

12   California. Plaintiff enrolled at DeVry in March 2013, paid tuition and associated costs of

13   attending DeVry, and graduated February 26, 2017 with an Associate in Network Systems

14   Administration degree. Plaintiff attended classes at the DeVry Sherman Oaks campus and online.

15   Plaintiff initially encountered Defendants' Standard 90% Ad in approximately the fall of 2012, in

16   a DeVry television commercial. Plaintiff recalls the message from the DeVry television

17   commercial that 90% of DeVry graduates were employed in their field of study within six months

18   of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90%

19   Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially

20   becoming a student and scheduled an appointment at the DeVry Sherman Oaks, California campus.

21   Plaintiff then met with a DeVry representative who reiterated the 90% Representation in

22   approximately January 2013 at the DeVry Sherman Oaks, California campus during a campus

23   visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on

24   the 90% Representation encountered in DeVry television commercials as confirmed in the meeting

25   with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry,

26   Plaintiff continued to encounter the 90% Representation in posters on the Sherman Oaks,

27   California campus and on internet pop-up advertisements. Plaintiff also relied on this repetition of

28

SECOND AMENDED COMPLAINT FOR DAMAGES                              4:19-CV-04079-JSW

the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry.  Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

55.    Plaintiff Liliana Molina was at all relevant times a resident of Cudahy, California. Plaintiff enrolled at DeVry in the spring of 2010, paid tuition and associated costs of attending DeVry, and graduated August 31, 2014 with a Bachelor of Science degree in Justice Administration. Plaintiff attended classes at the DeVry Long Beach, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2010 in a DeVry television commercial. Plaintiff encountered the 90% Representation on billboards and in radio advertisements around the same time. Plaintiff recalls the message from the DeVry television commercials, billboards, and radio advertisements that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry television commercials, on billboards and in radio advertisements. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Long Beach, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately April 2010 at the DeVry Long Beach, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the DeVry television commercials, on billboards and in radio advertisements as confirmed in the

1   meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at

2   DeVry, Plaintiff continued to encounter the 90% Representation in brochures, in television

3   commercials, on billboards, in radio advertisements and from academic advisors. Plaintiff also

4   relied on this repetition of the 90% Representation, confirming what she was told before enrolling

5   at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and

6   did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not

7   have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1)

8   Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2)

9   Defendants counted graduates who were not employed in their fields of study; (3) Defendants

10  excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result,

11  the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that

12  could be reasonably considered "in their field" is significantly smaller than 90%.

13         56.    Plaintiff Larry Burroughs was at all relevant times a resident of San Diego,

14  California. Plaintiff enrolled at DeVry October 25, 2010, paid tuition and associated costs of

15  attending DeVry, and graduated September 1, 2013 with a Bachelor of Science degree in Technical

16  Management. Plaintiff attended classes at the DeVry San Diego, California campus and online.

17  Plaintiff initially encountered Defendants' Standard 90% Ad in approximately the summer of

18  2010, in a DeVry television commercial. Plaintiff recalls the message from the DeVry television

19  commercial that 90% of DeVry graduates were employed in their field of study within six months

20  of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90%

21  Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially

22  becoming a student and scheduled an appointment at the DeVry San Diego, California campus.

23  Plaintiff then met with a DeVry representative who reiterated the 90% Representation in

24  approximately August 2010 at the DeVry San Diego, California campus, during a campus visit.

25  The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90%

26  Representation encountered in DeVry television commercials as confirmed in the meeting with

27  the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff

28

SECOND AMENDED COMPLAINT FOR DAMAGES                              4:19-CV-04079-JSW

1   continued to encounter the 90% Representation from professors during the Career Development

2   class, on posters around campus, and in television commercials. Plaintiff also relied on this

3   repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in

4   choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain

5   a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled

6   at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted

7   graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted

8   graduates who were not employed in their fields of study; (3) Defendants excluded graduates who

9   unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of

10  DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably

11  considered "in their field" is significantly smaller than 90%.

12      **57.**   Plaintiff Richard Lester was at all relevant times a resident of Lake Forest and Aliso

13  Viejo, California. Plaintiff enrolled at DeVry in spring 2010, paid tuition and associated costs of

14  attending DeVry, and graduated in October 2013 with a Bachelor of Science degree in Business

15  Administration. Plaintiff attended classes at the DeVry Irvine, Anaheim and Long Beach

16  campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in

17  approximately July 2009 on the DeVry website. Plaintiff recalls the message from the DeVry

18  website that 90% of DeVry graduates were employed in their field of study within six months of

19  graduation. Plaintiff chose to look further into becoming a student at DeVry based on seeing the

20  90% Representation on the DeVry website. Plaintiff contacted DeVry about potentially becoming

21  a student and scheduled an appointment at the DeVry Irvine, California campus. Plaintiff then met

22  with a DeVry representative who reiterated the 90% Representation in approximately July 2009 at

23  the DeVry Irvine, California campus, during a campus visit. The DeVry representative did not in

24  any way limit or qualify the statement. In reliance on the 90% Representation encountered on the

25  DeVry website as confirmed by the DeVry representative in the on campus meeting, Plaintiff chose

26  to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90%

27  Representation in television commercials, radio advertisements and posters on the Irvine, Anaheim

28

and Long Beach campuses.  Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

58.    Plaintiff Kevin Carter was at all relevant times a resident of San Diego, California. Plaintiff enrolled at DeVry in the summer of 2013, paid tuition and associated costs of attending DeVry, and graduated October 25, 2015 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry San Diego, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in DeVry television commercials. Plaintiff recalls the message from the DeVry television commercials that he saw from saw DeVry television commercials from approximately 2010 to May – July 2013 that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry San Diego, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately May – July 2013, at the DeVry San Diego, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in television commercials and on posters around campus, and also encountered

SECOND AMENDED COMPLAINT FOR DAMAGES                                    4:19-CV-04079-JSW

Defendants' Higher Income Ad. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, and on the Higher Income Ad, in choosing to remain a student at DeVry.  Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

59.   Plaintiff Alex Castillo was at all relevant times a resident of West Covina, California. Plaintiff enrolled at DeVry in 2011, paid tuition and associated costs of attending DeVry, and graduated June 29, 2014, with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry Pomona, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately the fall of 2010 in a DeVry television commercial. Plaintiff looked at the DeVry website and also encountered the 90% Representation there. Plaintiff recalls the message from DeVry television commercials and the website that 90% of DeVry graduates were employed in their field of study within six months of graduation. After researching online, Plaintiff began receiving emails from DeVry. Plaintiff chose to look further into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials and on the website. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Pomona, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately January 2011, at the DeVry Pomona, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials and on the website as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to

1    encounter the 90% Representation in emails and social media advertisements, and also
2    encountered Defendants' Higher Income Ad. Plaintiff also relied on this repetition of the 90%
3    Representation, confirming what he was told before enrolling at DeVry, and on the Higher Income
4    Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did
5    not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have
6    enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants
7    counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants
8    counted graduates who were not employed in their fields of study; (3) Defendants excluded
9    graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual
10   percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be
11   reasonably considered "in their field" is significantly smaller than 90%.

12          **60.**   Plaintiff Jason Helring was at all relevant times a resident of Mission Viejo,
13   California. Plaintiff enrolled at DeVry in September 2014, paid tuition and associated costs of
14   attending DeVry, and graduated on February 25, 2018 with a Bachelor of Science degree in
15   Communications. Plaintiff attended classes at the DeVry Anaheim campus and online. Plaintiff
16   initially encountered Defendants' Standard 90% Ad in approximately July 2014, in a DeVry
17   television commercial. Plaintiff recalls the message from the DeVry television commercial that
18   90% of DeVry graduates were employed in their field of study within six months of graduation.
19   Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation
20   in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student
21   and scheduled an appointment at the DeVry Anaheim, California campus. Plaintiff then met with
22   a DeVry representative who reiterated the 90% Representation in approximately August 2014, at
23   the DeVry Anaheim, California campus, during a campus visit. The DeVry representative did not
24   in any way limit or qualify the statement. In reliance on the 90% Representation encountered in
25   DeVry television commercials as confirmed in the meeting with the DeVry representative, Plaintiff
26   chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90%
27   Representation at the new student orientation, in brochures and pamphlets, on the DeVry website,

28

in television commercials, in internet pop-up advertisements, and during the Career Development class, and also encountered Defendants' Higher Income Ad. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, and on the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

61.    Plaintiff Vince Robinson was at all relevant times a resident of West Hills, California. Plaintiff enrolled at DeVry in July 2010, paid tuition and associated costs of attending DeVry, and graduated December 20, 2015 with a Bachelor of Science degree in Computer Engineering Technology. Plaintiff attended classes at the DeVry Sherman Oaks, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately early 2010, from a DeVry recruiter at a job fair. The recruiter gave Plaintiff a brochure that included the 90% Representation. Plaintiff recalls the message from the DeVry recruiter and brochure that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on hearing the 90% Representation from the DeVry recruiter and in the DeVry Brochure. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Sherman Oaks, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately June 2010, at the DeVry Sherman Oaks, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered from the DeVry recruiter as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at

1  DeVry, Plaintiff continued to encounter the 90% Representation during the Career Development

2  class, in the Career Services department, in brochures and from advisors. Plaintiff also relied on

3  this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry,

4  in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not

5  obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have

6  enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants

7  counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants

8  counted graduates who were not employed in their fields of study; (3) Defendants excluded

9  graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual

10  percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be

11  reasonably considered "in their field" is significantly smaller than 90%.

12       **62.**   Plaintiff Michael Coats was at all relevant times a resident of Tustin, California.

13  Plaintiff enrolled at DeVry in July 2012, paid tuition and associated costs of attending DeVry, and

14  graduated August 28, 2016 with a Bachelor of Science degree in Computer Information Systems.

15  Plaintiff attended classes at the DeVry Pomona, Long Beach and Anaheim campuses, and online.

16  Plaintiff initially encountered Defendants' Standard 90% Ad in approximately June 2012 through

17  advertisements playing in the office waiting area at the Anaheim, California DeVry campus and a

18  DeVry recruiter. Plaintiff had previously attended DeVry from 2000 through 2004, and was at the

19  Anaheim campus to discuss transferring credits. Plaintiff recalls the message from the DeVry

20  advertisements playing in the waiting area of the office and the recruiter that 90% of DeVry

21  graduates were employed in their field of study within six months of graduation. Plaintiff chose to

22  look into becoming a student at DeVry again based on the 90% Representation in the DeVry

23  advertisements playing in the waiting area of the office at the Anaheim campus and from the

24  recruiter. Immediately after meeting with the recruiter to discuss transfer credits, Plaintiff met with

25  an admissions representative at the DeVry Anaheim, California campus. The DeVry admissions

26  representative reiterated the 90% Representation, in approximately June 2012, at the DeVry

27  Anaheim, California campus. The DeVry admissions representative did not in any way limit or

28

qualify the statement. In reliance on the 90% Representation encountered in the DeVry advertisements playing in the waiting area of the office at the Anaheim campus and from the recruiter as confirmed in the meeting with the DeVry admissions representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in posters and on television monitors at the DeVry campuses, and also encountered Defendants' Higher Income Ad. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, and on the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation in 2016 from DeVry. Plaintiff would not have enrolled at DeVry again in 2012 if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

     **63.**    Plaintiff Jeffrey Kaner was at all relevant times a resident of Burbank, California. Plaintiff enrolled at DeVry in July 2009, paid tuition and associated costs of attending DeVry, and graduated June 26, 2011 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry Sherman Oaks, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately May or June 2009, in a DeVry television commercial. Plaintiff recalls the message from the DeVry television commercial that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Sherman Oaks, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately May or June 2009, at the DeVry Sherman Oaks, California campus, during a campus visit. The DeVry

SECOND AMENDED COMPLAINT FOR DAMAGES                    4:19-CV-04079-JSW

representative did not in any way limit or qualify the statement. In reliance on the 90% Representation in DeVry television commercials as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in television commercials, on posters at the Sherman Oaks, California campus, in meetings with student counselors each semester, in brochures and flyers in the job center at the Sherman Oaks, California campus, and in meetings with job center coaches. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

64.    Plaintiff Lizbeth Eriza was at all relevant times a resident of Anaheim, California. Plaintiff enrolled at DeVry in February or March of 2012, paid tuition and associated costs of attending DeVry, and graduated June 26, 2016 with a Bachelor of Science degree in Justice Administration. Plaintiff attended classes at the DeVry Anaheim and Long Beach, California campuses, and online. Plaintiff initially heard Defendants' claim that 90% of DeVry graduates were employed in their field of study within six months of graduation in November 2011 from a friend who attended DeVry.  Plaintiff then visited the DeVry website in December 2011 to find out more information and encountered the Standard 90% Ad there. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on seeing the 90% Representation on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Anaheim, California

campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately January or February of 2012, at the DeVry Anaheim, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation from career advisors, financial advisors, counselors and on posters around both the Anaheim and Long Beach, California campuses, and also encountered Defendants' Higher Income Ad. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, and on the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

65.    Plaintiff Wesley Lisska was at all relevant times a resident of Palmdale, California. Plaintiff enrolled at DeVry in March 2010, paid tuition and associated costs of attending DeVry, and graduated June 24, 2012 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry Palmdale and Sherman Oaks, California campuses, and online. Plaintiff became interested in possibly attending DeVry from a cold call he received from a DeVry recruiter. During the call, the recruiter scheduled an appointment for Plaintiff to visit the Palmdale, California campus in approximately January or February of 2010. Plaintiff then met with a DeVry representative who stated that that 90% of DeVry graduates were employed in their field of study within six months of graduation. This statement of the 90% Representation was made during an in-person appointment at the DeVry Palmdale, California campus in January or February of 2010.

SECOND AMENDED COMPLAINT FOR DAMAGES                                4:19-CV-04079-JSW

The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered from the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in the Career Development course.  Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

66.   Plaintiff Miguel Enriquez was at all relevant times a resident of San Jacinto, California. Plaintiff enrolled at DeVry in August 2010, paid tuition and associated costs of attending DeVry, and graduated April 26, 2015 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry Pomona and Riverside campuses. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately January 2010 in a DeVry television commercial. Plaintiff recalls the message from the DeVry television commercial that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Colton, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately January 2010 at the DeVry Colton, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed in the meeting with the DeVry representative, Plaintiff chose

to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation during orientation, in television commercials, and from professors.  Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**67.**   Plaintiff Sven-Eric Montes was at all relevant times a resident of Burbank, California. Plaintiff enrolled at DeVry in 2010, paid tuition and associated costs of attending DeVry, and graduated in June 24, 2012 with a Bachelor of Science degree in Technical Management, and December 22, 2013 with a Master of Business Administration degree. Plaintiff attended classes at the DeVry Sherman Oaks, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately May 2010, on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on seeing the 90% Representation on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Sherman Oaks, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation on August 19, 2010 at the DeVry Sherman Oaks, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on television monitors around the

Sherman Oaks, California campus and in television commercials, and also encountered Defendants' Higher Income Ad. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, and on the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

68.    Plaintiff Matthew Guimond was at all relevant times a resident of Rancho Santa Margarita, California. Plaintiff enrolled at DeVry in the summer of 2009, paid tuition and associated costs of attending DeVry, and graduated March 3, 2013 with a Bachelor of Science degree in Game and Simulation Programming. Plaintiff attended classes at the DeVry Irvine and Long Beach, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately May 2009, in a DeVry television commercial. Plaintiff looked at the DeVry website and also encountered the 90% Representation there. Plaintiff recalls the message from DeVry television commercials and the website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials and on the website. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Irvine, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately June 2009, at the DeVry Irvine, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials and on the website as confirmed in the meeting with the DeVry

SECOND AMENDED COMPLAINT FOR DAMAGES                                        4:19-CV-04079-JSW

representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on posters in the halls of the campuses and from his financial advisor. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

69.     Plaintiff Alfred Hernandez III was at all relevant times a resident of Maywood, California. Plaintiff enrolled at DeVry in 2013, paid tuition and associated costs of attending DeVry, and graduated in 2016 with a Bachelor of Science in Computer Information Systems degree. Plaintiff attended classes at the DeVry Long Beach, Anaheim and Pomona, California campuses and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2013, from a DeVry recruiter that came to his high school.  Subsequent to the encounter with a DeVry recruiter, Plaintiff saw Defendants' Standard 90% Ad in television commercials. Plaintiff recalls the message from the DeVry recruiter and television commercials that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation from a DeVry recruiter and in television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Long Beach, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately 2013, at the DeVry Long Beach, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation from the DeVry recruiter and in television commercials as

confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on posters around campus, in television commercials, and from faculty members and the dean during the Career Development class. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

70.     Plaintiff Joel Luis was at all relevant times a resident of Los Angeles, California. Plaintiff enrolled at DeVry in the summer of 2009, paid tuition and associated costs of attending DeVry, and graduated February 26, 2012 with an Associate in Electronics and Computer Technology degree, June 29, 2014 with a Bachelor of Science degree in Technical Management, and April 24, 2016 with a Master of Business Administration degree. Plaintiff attended classes at the DeVry Long Beach, Alhambra and Pomona, California campuses. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2009, from a DeVry recruiter that came to his high school. Plaintiff recalls the message from the DeVry recruiter that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on hearing the 90% Representation from a DeVry recruiter. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Long Beach, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately 2009, at the DeVry Long Beach, California campus during a campus visit. The DeVry representative did not in any way

limit or qualify the statement. In reliance on the 90% Representation encountered from the DeVry recruiter as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in television commercials, on billboards, from academic advisors, and in emails from DeVry. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

71. Plaintiff Ivan Oceguoda was at all relevant times a resident of Norwalk, California. Plaintiff enrolled at DeVry in April 2008, paid tuition and associated costs of attending DeVry, and graduated in June 2010 with a Bachelor of Science degree in Network and Communication Management, and in September 2011 with a Master of Information Systems degree from DeVry's Keller Graduate School of Management. Plaintiff attended classes at the DeVry Long Beach and Pomona campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately January or February 2008 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Long Beach, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately March 2008 at the DeVry Long Beach, California campus, during a campus visit.

The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in radio advertisements and television commercials.  Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

72.   Plaintiff Kristi Hernandez was at all relevant times a resident of San Dimas, California. Plaintiff enrolled at DeVry in the summer of 2012, paid tuition and associated costs of attending DeVry's Keller Graduate School of Management, and graduated April 27, 2014 with a Master of Project Management degree. Plaintiff attended classes at the DeVry Pomona campus. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately January 2012, in a DeVry television commercial. Plaintiff looked at the DeVry website and also encountered the 90% Representation there. Plaintiff also began seeing DeVry internet pop-up and Facebook advertisements around this time. Plaintiff recalls the message from the DeVry television commercials, website, and internet pop-up and Facebook advertisements that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials, on the DeVry website, and in internet pop-up and Facebook advertisements. Plaintiff contacted DeVry about potentially becoming a student and was told to come to the DeVry Pomona, California campus. Plaintiff then met with a DeVry representative

who reiterated the 90% Representation in approximately May 2012, at the DeVry Pomona, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials, on the DeVry website, and in internet pop-up and Facebook advertisements as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in television commercials, social media advertisements, on billboards, and in emails from DeVry representatives, and also encountered Defendants' Higher Income Ad. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, on the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**73.** Plaintiff Aaron Gonzalez was at all relevant times a resident of Lancaster, California. Plaintiff enrolled at DeVry in 2012, paid tuition and associated costs of attending DeVry, and graduated on October 22, 2017, with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the DeVry Palmdale and Sherman Oaks, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2012 in DeVry television commercials. Plaintiff recalls the message from the DeVry television commercials that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Palmdale,

California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately 2012, at the DeVry Palmdale, California campus during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in DeVry television commercials and from professors, and also encountered Defendants' Higher Income Ad. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, and on the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**74.** Plaintiff Enriqueta Ramirez was at all relevant times a resident of Murrieta, California. Plaintiff enrolled at DeVry in the spring of 2009, paid tuition and associated costs of attending DeVry, and graduated June 26, 2011 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry Pomona and Colton, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2009, on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on seeing the 90% Representation on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student and scheduled an on campus appointment. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately 2009 during a campus visit. The DeVry representative did not in

any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**75.** Plaintiff William Smith was at all relevant times a resident of San Jacinto, California. Plaintiff enrolled at DeVry in October 2009, paid tuition and associated costs of attending DeVry, and graduated April 28, 2013 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry Pomona and Colton campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2009, in a DeVry television commercial. Plaintiff recalls the message from the DeVry television commercial that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Pomona, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately September 2009, at the DeVry Pomona, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the

90% Representation around the Pomona and Colton campuses. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

76.   Plaintiff Mario Marquez was at all relevant times a resident of Paramount, California. Plaintiff enrolled at DeVry in March 2011, paid tuition and associated costs of attending DeVry, and graduated January 28, 2015 with a Bachelor of Science degree in Business Administration, and October 23, 2016 with a Master of Business Administration degree. Plaintiff attended classes at the DeVry Long Beach, Pomona, Alhambra, Anaheim and San Diego, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately end of 2010 or beginning of 2011 in a DeVry television commercial. Plaintiff then looked at the DeVry website and also encountered the 90% Representation there. Plaintiff recalls the message from the DeVry television commercials and the DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry television commercials and on the website. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Pomona, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately January or February of 2011 at the DeVry Pomona, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials and on the website as confirmed in

the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry.  While a student at DeVry, Plaintiff continued to encounter the 90% Representation from faculty members, in posters and on television monitors around the Long Beach, Pomona, Alhambra, Anaheim and San Diego, California campuses, in Facebook advertisements, in internet pop-up advertisements, and in television commercials. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

77.   Plaintiff Laurie Jaramillo was at all relevant times a resident of Rancho Cucamonga, California. Plaintiff enrolled at DeVry in January 2010, paid tuition and associated costs of attending DeVry, and graduated February 25, 2018 with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the DeVry Pomona, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately September or October 2010 in a cold call from DeVry that originated from job applications she had completed. Plaintiff subsequently encountered Defendants' Standard 90% Ad around the same time frame in television commercials, and then in radio advertisements. Plaintiff recalls the message from the DeVry cold call, television commercials and radio advertisements that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry cold calls, television commercials and radio advertisements. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Pomona, California campus. Plaintiff then met

with a DeVry representative who reiterated the 90% Representation in approximately December 2010 at the DeVry Pomona, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the DeVry cold call, television commercials and radio advertisements as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in DeVry television commercials, and from DeVry professors and counselors. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

78.     Plaintiff John Sanjeev Gagoomal was at all relevant times a resident of West Covina, California. Plaintiff enrolled at DeVry on March 1, 2010, paid tuition and associated costs of attending DeVry, and graduated on June 24, 2012 with an Associate in Network Systems Administration degree. Plaintiff attended classes at the DeVry Alhambra and Pomona, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately February 2010, in a DeVry television commercial. Plaintiff recalls the message from the DeVry television commercial that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Alhambra, California campus. Plaintiff then met with a DeVry representative who reiterated the

90% Representation in approximately February 2010 at the DeVry Alhambra, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on posters around the Alhambra and Pomona, California campuses, in television commercials and radio advertisements. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**79.**   Plaintiff Francisco Javier Fuentes Cabrera was at all relevant times a resident of Garden Grove, California. Plaintiff enrolled at DeVry on July 7, 2008, paid tuition and associated costs of attending DeVry, and graduated on June 24, 2012 with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the DeVry Long Beach, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately May or June 2008 through a DeVry recruiter that came to his high school. Plaintiff recalls the message from the DeVry recruiter that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on hearing the 90% Representation from the DeVry recruiter. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Long Beach, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately May or June 2008 at the DeVry Long Beach, California campus during a campus

1    visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on

2    the 90% Representation encountered from the DeVry recruiter as confirmed in the meeting with

3    the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff

4    continued to encounter the 90% Representation on posters on campus, from professors, during the

5    Career Development class, and in the financial advisor's office. Plaintiff also relied on this

6    repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in

7    choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain

8    a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled

9    at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted

10   graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted

11   graduates who were not employed in their fields of study; (3) Defendants excluded graduates who

12   unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of

13   DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably

14   considered "in their field" is significantly smaller than 90%.

15        **80.**    Plaintiff Tyler Jones was at all relevant times a resident of Oceanside and Carlsbad,

16   California. Plaintiff enrolled at DeVry in 2011, paid tuition and associated costs of attending

17   DeVry, and graduated in 2015, with a Bachelor of Science degree in Multimedia and Design.

18   Plaintiff attended classes at the DeVry Pomona, California campus. Plaintiff initially encountered

19   Defendants' Standard 90% Ad in approximately 2011, in a DeVry television commercial. Plaintiff

20   looked at the DeVry website and also encountered the 90% Representation there.  Plaintiff recalls

21   the message from the DeVry television commercial and on the DeVry website that 90% of DeVry

22   graduates were employed in their field of study within six months of graduation. Plaintiff chose to

23   look further into becoming a student at DeVry based on seeing the 90% Representation in DeVry

24   television commercials and on the DeVry website. Plaintiff contacted DeVry about potentially

25   becoming a student and scheduled an appointment at the DeVry San Diego, California campus.

26   Plaintiff then met with a DeVry representative who reiterated the 90% Representation in

27   approximately 2011 at the DeVry San Diego, California campus, during a campus visit. The DeVry

28

representative did not in any way limit or qualify the statement. In reliance on the 90% Representation in DeVry television commercials and on the DeVry website as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on the DeVry website, in television commercials and during career fairs, and also encountered Defendants' Higher Income Ad. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, and on the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**81.**   Plaintiff Adriana Marquez was at all relevant times a resident of Downey, California. Plaintiff enrolled at DeVry in June 2010, paid tuition and associated costs of attending DeVry, and graduated in October 2014 with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the DeVry Long Beach, Alhambra, Anaheim and Pomona, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in May 2010, in a DeVry television commercial. Plaintiff then looked at the DeVry website and encountered the 90% Representation there. Plaintiff recalls the message from the DeVry television commercial and website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation in DeVry television commercials and on the website. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Long Beach, California campus. Plaintiff then met with a DeVry

representative who reiterated the 90% Representation in June 2010, at the DeVry Long Beach, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the DeVry television commercials and on the DeVry website as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in brochures, posters, banners and bulletin boards around every campus she attended, from faculty members and advisors, and in DeVry television commercials. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry in periodic meetings with advisors. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

      **82.**   Plaintiff Joseph Klecka was at all relevant times a resident of Santa Ana and Aliso Viejo, California. Plaintiff enrolled at DeVry February 27, 2012, paid tuition and associated costs of attending DeVry, and graduated October 22, 2017 with a Bachelor of Science degree in Network and Communications Management. Plaintiff attended classes at the DeVry Anaheim and Long Beach, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately November or December 2011 in a DeVry television commercial. Plaintiff then looked at Defendants' website approximately January 2012 and also encountered the Standard 90% Ad there. Plaintiff recalls the message from DeVry television commercials and the website that 90% of DeVry graduates were employed in their field of study within six months of

graduation. Plaintiff chose to look further into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials and on the website. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Anaheim, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately February 2012 at the DeVry Anaheim, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials and on the website as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on posters, flyers and television monitors at the Long Beach and Anaheim, California campuses, from members of the DeVry administration during the new student orientation, and in television commercials. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**83.**   Plaintiff Jasmine Lovett was at all relevant times a resident of North Hill, California. Plaintiff enrolled at DeVry in 2010, paid tuition and associated costs of attending DeVry, and graduated in 2012 with a Bachelor of Science degree in Technical Management, and in 2016 with a Master of Public Administration degree from DeVry's Keller Graduate School of Management. Plaintiff attended classes at the DeVry Sherman Oaks, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2010, in a DeVry

television commercial. Plaintiff recalls the message from the DeVry television commercial that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Sherman Oaks, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately 2010, at the DeVry Sherman Oaks, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in television commercials, from Career Services advisors, and in brochures. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

84.    Plaintiff Robert Saige Jr. was at all relevant times a resident of Pomona, California. Plaintiff enrolled at DeVry in October 2010, paid tuition and associated costs of attending DeVry, and graduated September 1, 2013 with an Associate in Electronics and Computer Technology degree. Plaintiff attended classes at the DeVry Pomona campus. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2010, in a DeVry television commercial. Plaintiff recalls the message from DeVry television commercials that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into

SECOND AMENDED COMPLAINT FOR DAMAGES                    4:19-CV-04079-JSW

becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Pomona, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately October 2010, at the DeVry Pomona, California campus during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry.  While a student at DeVry, Plaintiff continued to encounter the 90% Representation on posters on campus, in television commercials, in advertisements on the internet, and from faculty and staff. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

85.     Plaintiff Lenore Mallek was at all relevant times a resident of San Diego, California. Plaintiff enrolled at DeVry in September 2012, paid tuition and associated costs of attending DeVry, and graduated June 28, 2015 with an Associate in Health Information Technology degree. Plaintiff attended classes at the DeVry San Diego, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately May 2012 in a DeVry television commercial and in a radio advertisement. Plaintiff recalls the message from the DeVry television commercial and radio advertisement that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry

based on the 90% Representation in DeVry television commercials and radio advertisements. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry San Diego, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately August 2012, at the DeVry San Diego, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the DeVry television commercials and radio advertisements as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in the Career Development class, from DeVry advisors, on posters, flyers, and brochures around the San Diego, California campus, on billboards, in radio advertisements and on social media, and also encountered Defendants' Higher Income Ad. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, and on the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

86.    Plaintiff Paula Lochray was at all relevant times a resident of Hesperia, California. Plaintiff enrolled at DeVry in May 2013, paid tuition and associated costs of attending DeVry, and graduated April 23, 2017 with an Associate in Accounting degree. Plaintiff attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately May 2011, in a DeVry television commercial. After researching colleges online, plaintiff began receiving marketing emails from DeVry. Plaintiff recalls the message from DeVry television commercials and marketing emails that 90% of DeVry graduates were employed in their field of study within

SECOND AMENDED COMPLAINT FOR DAMAGES                    4:19-CV-04079-JSW

six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry television commercials and marketing emails. Plaintiff contacted DeVry about potentially becoming a student and spoke on the phone with a DeVry representative. In Plaintiffs' telephone conversation with a DeVry representative on March 18, 2013, the DeVry representative reiterated the 90% Representation. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials and marketing emails as confirmed in the telephone call with the DeVry representative, Plaintiff chose to enroll at DeVry.  While a student at DeVry, Plaintiff continued to encounter the 90% Representation in television commercials, marketing emails, on the DeVry website and in Facebook advertisements, and also encountered Defendants' Higher Income Ad. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, and on the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

87.    Plaintiff Arturo Saz was at all relevant times a resident of North Hollywood, California. Plaintiff enrolled at DeVry in the spring of 2014, paid tuition and associated costs of attending DeVry, and graduated October 23, 2016 with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the DeVry Oxnard and Thousand Oaks campuses, and online. Plaintiff initially heard of DeVry's claim that that 90% of DeVry graduates were employed in their field of study within six months of graduation from a friend in the spring of 2014. Plaintiff researched DeVry on his own on the DeVry website and encountered the Standard 90% Ad there.

Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on seeing the 90% Representation on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student and spoke with three different DeVry representatives. The three DeVry representatives with whom Plaintiff spoke before enrolling at DeVry reiterated the 90% Representation. In reliance on the 90% Representation encountered on the DeVry website as confirmed by the three DeVry representatives, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on the DeVry website and from DeVry representatives. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**88.** Plaintiff Sajaad Shah was at all relevant times a resident of Pomona, California. Plaintiff enrolled at DeVry in the spring of 2010, paid tuition and associated costs of attending DeVry, and graduated June 26, 2011 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry Pomona campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2009, on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on seeing the 90% Representation on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Pomona,

SECOND AMENDED COMPLAINT FOR DAMAGES                                    4:19-CV-04079-JSW

California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately early 2010, at the DeVry Pomona, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation from DeVry staff and career service counselors, on posters around campus, and in the Career Development class. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

89.     Plaintiff Jennifer Wells was at all relevant times a resident of San Diego, California. Plaintiff enrolled at DeVry in the spring of 2009, paid tuition and associated costs of attending DeVry, and graduated June 24, 2012 with a Master of Business Administration degree from DeVry's Keller Graduate School of Management. Plaintiff attended classes at the DeVry San Diego campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately January or February 2009, on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on seeing the 90% Representation on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry San Diego, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in

1   approximately January or February 2009, at the DeVry San Diego, California campus, during a

2   campus visit. The DeVry representative did not in any way limit or qualify the statement. In

3   reliance on the 90% Representation encountered in the DeVry website as confirmed in the meeting

4   with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry,

5   Plaintiff continued to encounter the 90% Representation in DeVry television commercials, in

6   brochures and posted around campus. Plaintiff also relied on this repetition of the 90%

7   Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a

8   student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field

9   within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she

10   had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who

11   continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who

12   were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully

13   attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry

14   graduates who, at or near the time they graduated, found jobs that could be reasonably considered

15   "in their field" is significantly smaller than 90%.

16       **90.**   Plaintiff Yi Wang was at all relevant times a resident of Alhambra, California.

17   Plaintiff enrolled at DeVry in September 2011, paid tuition and associated costs of attending

18   DeVry, and graduated in July 2013 with a Bachelor of Science degree in Technical Management.

19   Plaintiff attended classes at the DeVry Alhambra and Pomona campuses, and online. Plaintiff

20   initially encountered Defendants' Standard 90% Ad in approximately the summer of 2011 on the

21   DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates

22   were employed in their field of study within six months of graduation. Plaintiff chose to look

23   further into becoming a student at DeVry based on the 90% Representation on the DeVry website.

24   Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at

25   the DeVry Alhambra, California campus. Plaintiff then met with a DeVry representative who

26   reiterated the 90% Representation in approximately July 2011, at the DeVry Alhambra, California

27   campus.  The DeVry representative did not in any way limit or qualify the statement. In reliance

28

SECOND AMENDED COMPLAINT FOR DAMAGES                              4:19-CV-04079-JSW

on the 90% Representation encountered on the DeVry website as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on posters around campus. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**91.** Plaintiff Brandon Lorenz was at all relevant times a resident of Upland, California. Plaintiff enrolled at DeVry in the summer of 2010, paid tuition and associated costs of attending DeVry, and graduated August 31, 2014 with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the DeVry Pomona, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2010 in a DeVry television commercial. Plaintiff recalls the message from the DeVry television commercial that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Pomona, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately August 2010, at the DeVry Pomona, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90%

Representation on the DeVry website, in posters and flyers around the Pomona, California campus, in television commercials, in radio advertisements, posters on campus, on billboards and in social media advertisements. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

92.     Plaintiff Marcos Arroyo was at all relevant times a resident of Ontario, California. Plaintiff enrolled at DeVry in August 2011, paid tuition and associated costs of attending DeVry, and graduated March 2, 2014 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry Pomona campus. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately March or April of 2011, in a DeVry television commercial. Plaintiff recalls the message from the DeVry television commercial that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Colton, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately June or July of 2011 at the DeVry Colton, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90%

SECOND AMENDED COMPLAINT FOR DAMAGES                                    4:19-CV-04079-JSW

Representation during the Career Development class and on posters at the Pomona, California campus, and also encountered Defendants' Higher Income Ad. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**93.**    Plaintiff Kevin Scott Wilson was at all relevant times a resident of Hemet, California. Plaintiff enrolled at DeVry February of 2016, paid tuition and associated costs of attending DeVry, and graduated October 27, 2018, with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the DeVry Pomona campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately February 2016 on the DeVry website while researching universities. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student and talked with a DeVry representative who reiterated the 90% Representation in approximately February 2016 during a phone call. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed in the telephone call with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not

SECOND AMENDED COMPLAINT FOR DAMAGES                                    4:19-CV-04079-JSW

obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

94.     Plaintiff Sheena Todd was at all relevant times a resident of San Diego, California. Plaintiff enrolled at DeVry in August 2014, paid tuition and associated costs of attending DeVry, and graduated in August 2016 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry San Diego campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2014, in a DeVry television commercial. Plaintiff recalls the message from the DeVry television commercial that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials. Plaintiff was serving in the military at the time and DeVry sent representatives to the base. DeVry representatives gave Plaintiff brochures that included the 90% Representation and prompted Plaintiff to visit the DeVry website.  Plaintiff also encountered the 90% Representation on the DeVry website. Plaintiff then spoke with a DeVry representative on the base about potentially becoming a student.  The DeVry representative reiterated the 90% Representation in approximately July 2014, on the military base. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials, in the brochures, and on the website as confirmed in the meeting with the DeVry representative on the military base, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in television commercials, on posters that were around campus, in classes, and in emails.  Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at

SECOND AMENDED COMPLAINT FOR DAMAGES                                    4:19-CV-04079-JSW

1   DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher

2   Income Ad while a student at DeVry online, in posters, at the career fair, and it was spoken about

3   in class. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at

4   DeVry.  Plaintiff actively sought employment in, and did not obtain a job in, her field within six

5   months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known

6   that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with

7   the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not

8   employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully

9   attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry

10  graduates who, at or near the time they graduated, found jobs that could be reasonably considered

11  "in their field" is significantly smaller than 90%.

12       **95.**   Plaintiff Glenn Boucher was at all relevant times a resident of Oxnard, California.

13  Plaintiff enrolled at DeVry in the spring of 2011, paid tuition and associated costs of attending

14  DeVry, and graduated in the spring of 2014 with a Bachelor of Science degree in Computer

15  Information Systems. Plaintiff attended classes at the DeVry Long Beach, Pomona, Sherman Oaks

16  and Oxnard campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in

17  approximately 2011 in a DeVry television commercial. Plaintiff then looked at the DeVry website

18  and also encountered the 90% Representation there. The 90% Representation was reiterated in

19  approximately March 2011 in a telephone call with a DeVry recruiter. Plaintiff recalls the message

20  from the DeVry television commercials, website, and telephone call with a recruiter that 90% of

21  DeVry graduates were employed in their field of study within six months of graduation. Plaintiff

22  chose to look further into becoming a student at DeVry based on the 90% Representation in the

23  television commercials, on the website, and in the telephone call with a DeVry recruiter. Plaintiff

24  contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry

25  Sherman Oaks, California campus.  Plaintiff then met a DeVry representative who reiterated the

26  90% Representation on or about April 15, 2011 at the DeVry Sherman Oaks, California campus,

27  during a campus visit. The DeVry representative did not in any way limit or qualify the statement.

28

SECOND AMENDED COMPLAINT FOR DAMAGES                    4:19-CV-04079-JSW

In reliance on the 90% Representation encountered in DeVry television commercials, on the website, and in the telephone call with a DeVry recruiter as confirmed by the DeVry representative during the on campus meeting, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on posters, digital displays and taped posts on the televisions around the campuses. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry.  Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**96.**   Plaintiff Kassandra Peraza was at all relevant times a resident of Fontana, California. Plaintiff enrolled at DeVry in August 2011, paid tuition and associated costs of attending DeVry, and graduated December 21, 2014 with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the DeVry Pomona, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately August 2011, in a DeVry radio advertisement. Plaintiff recalls the message from the DeVry radio advertisement that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry radio advertisements. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Pomona, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately August 2011, at the DeVry Pomona, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in

1  DeVry radio advertisements as confirmed in the meeting with the DeVry representative, Plaintiff

2  chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90%

3  Representation from advisors, radio advertisements, and brochures, and also encountered

4  Defendants' Higher Income Ad. Plaintiff also relied on this repetition of the 90% Representation,

5  confirming what she was told before enrolling at DeVry, and the Higher Income Ad, in choosing

6  to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in,

7  her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry

8  if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates

9  who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates

10  who were not employed in their fields of study; (3) Defendants excluded graduates who

11  unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of

12  DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably

13  considered "in their field" is significantly smaller than 90%.

14      **97.**   Plaintiff Jose Salvador Zavala was at all relevant times a resident of Long Beach,

15  California. Plaintiff enrolled at DeVry in August 2008, paid tuition and associated costs of

16  attending DeVry, and graduated in 2012 with a Bachelor of Science degree in Operations

17  Management and a Bachelor of Science degree in Business Administration. Plaintiff attended

18  classes at the DeVry Long Beach campus and online. Plaintiff initially encountered Defendants'

19  Standard 90% Ad in approximately spring 2008 on the DeVry website. Plaintiff recalls the

20  message from the DeVry website that 90% of DeVry graduates were employed in their field of

21  study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry

22  based on seeing the 90% Representation on the DeVry website. Plaintiff was invited to visit the

23  DeVry Long Beach campus for a seminar luncheon. Plaintiff decided to attend and then met with

24  a DeVry representative who reiterated the 90% Representation, in approximately August 2008, at

25  the DeVry Long Beach, California campus. The DeVry representative did not in any way limit or

26  qualify the statement. In reliance on the 90% Representation encountered on the DeVry website

27  as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry.

28

While a student at DeVry, Plaintiff continued to encounter the 90% Representation during a DeVry new student orientation at the Long Beach campus. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

98.   Plaintiff Jonathan Salazar was at all relevant times a resident of Palmdale, California. Plaintiff enrolled at DeVry in the summer of 2008, paid tuition and associated costs of attending DeVry, and graduated June 24, 2012 with a Bachelor of Science degree in Electronics Engineering Technology. Plaintiff attended classes at the DeVry Sherman Oaks campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2008 from a DeVry recruiter who came to Plaintiff's high school. Plaintiff recalls the message from the DeVry recruiter that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on hearing about the 90% Representation from the DeVry recruiter. Plaintiff visited the DeVry Sherman Oaks, California campus and met with the same recruiter. Plaintiff then met another DeVry representative. The recruiter and the other DeVry representative reiterated the 90% Representation in approximately 2008 at the DeVry Sherman Oaks, California campus during a campus visit. The DeVry recruiter and representative did not in any way limit or qualify the statement. In reliance on the 90% Representation from the DeVry recruiter as confirmed in the meeting with the DeVry

representative during a campus visit, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on banners and posters in the hallways on the Sherman Oaks campus. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

99.     Plaintiff Angelica Villalobos was at all relevant times a resident of San Diego, California. Plaintiff enrolled at DeVry in the summer of 2011, paid tuition and associated costs of attending DeVry, and graduated February 28, 2016 with a Bachelor of Science degree in Justice Administration. Plaintiff attended classes at the DeVry San Diego campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2012, through a DeVry recruiter that visited her high school. Plaintiff recalls the message from the DeVry recruiter that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on hearing the 90% Representation from the DeVry recruiter. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry San Diego, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately 2012, at the DeVry San Diego, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered from the DeVry recruiter as confirmed in the meeting with the DeVry representative during a scheduled campus visit, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to

SECOND AMENDED COMPLAINT FOR DAMAGES                                4:19-CV-04079-JSW

encounter the 90% Representation in DeVry television commercials, in posters in the admissions office at the San Diego campus, and on the DeVry website. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry.  Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

100. Plaintiff Raymond Perez was at all relevant times a resident of Santa Ana, California. Plaintiff enrolled at DeVry in April 2012, paid tuition and associated costs of attending DeVry, and graduated June 29, 2014 with a Bachelor of Science degree in Justice Administration, and in August 2017 with a Master of Human Resources Management degree from DeVry's Keller Graduate School of Management. Plaintiff attended classes at the DeVry Long Beach and Anaheim, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately August or September 2010 in a DeVry television commercial. Plaintiff recalls the message from the DeVry television commercial that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Anaheim, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately March 2012, at the DeVry Anaheim, California campus during a campus visit. The DeVry representative did not in any way

limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation from the Dean during multiple verbal presentations at the Anaheim, California campus. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry from a recruiter and counselors. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry.  Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**101.** Plaintiff Nadjib Sandjakedine was at all relevant times a resident of Hawthorne, California. Plaintiff enrolled at DeVry in November 2014, paid tuition and associated costs of attending DeVry, and graduated February 25, 2018, with a Bachelor of Science degree in Communication Management. Plaintiff attended classes at the DeVry Long Beach campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately July 2014, in a DeVry television commercial. Plaintiff recalls the message from the DeVry television commercial that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in the DeVry television commercial. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Sherman Oaks, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in

approximately 2014, at the DeVry Sherman Oaks, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation from professors. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**102.** Plaintiff Aaron Ruiz was at all relevant times a resident of San Marcos, California. Plaintiff enrolled at DeVry in the fall of 2008, paid tuition and associated costs of attending DeVry, and graduated March 1, 2015 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry San Diego campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2008 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry San Diego, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately the fall of 2008, at the DeVry San Diego, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed in the

SECOND AMENDED COMPLAINT FOR DAMAGES                    4:19-CV-04079-JSW

meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on posters around campus and in the Career Development course. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**103.** Plaintiff Alex Cortez was at all relevant times a resident of Los Gatos and Anaheim, California. Plaintiff enrolled at DeVry in October 2008, paid tuition and associated costs of attending DeVry, and graduated in October 2013 with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the DeVry Long Beach and Anaheim, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately March or April 2008, from a DeVry recruiter that came to his high school. Plaintiff recalls the message from the DeVry recruiter that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on hearing the 90% Representation from the DeVry recruiter. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Fresno, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately March or April 2008, at the DeVry Fresno, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered from the DeVry recruiter as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at

SECOND AMENDED COMPLAINT FOR DAMAGES                    4:19-CV-04079-JSW

DeVry, Plaintiff continued to encounter the 90% Representation from counselors, in television commercials, in radio advertisements, on posters around the Long Beach and Anaheim, California campuses and during DeVry career fairs, and also encountered Defendants' Higher Income Ad. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, and on the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**104.** Plaintiff Gorge Regalado was at all relevant times a resident of Pomona, California. Plaintiff enrolled at DeVry in March 2011, paid tuition and associated costs of attending DeVry, and graduated March 3, 2013 with an Associate in Network Systems Administration degree. Plaintiff attended classes at the DeVry Pomona and Long Beach, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately August or September 2010, in a DeVry television commercial. Plaintiff recalls the message from the DeVry television commercial that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Pomona, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately February 2011, at the DeVry Pomona, California campus during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed in the meeting with

the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in television commercials, on the DeVry website, on posters around the Pomona and Long Beach, California campus, in Facebook advertisements and on billboards near campus. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry.  Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

105.   Plaintiff Trevor Rosca was at all relevant times a resident of Whittier, California. Plaintiff enrolled at DeVry in May or June 2013, paid tuition and associated costs of attending DeVry, and graduated August 27, 2017 with a Bachelor of Science degree in Network and Communications Management. Plaintiff attended classes at the DeVry Long Beach and Anaheim, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately March or April 2013 in DeVry television commercials and on the DeVry website. Plaintiff recalls the message from the DeVry television commercials and website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff became interested in possibly attending DeVry based on the 90% Representation from DeVry television commercials and on the DeVry website. Plaintiff was contacted by a DeVry representative about potentially becoming a student and invited to visit the DeVry Long Beach, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately April 2013, at the DeVry Long Beach, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In

reliance on the 90% Representation encountered in DeVry television commercials and on the DeVry website as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in posters around the Long Beach and Anaheim campuses, in Facebook advertisements, and in the Career Development class, and also encountered Defendants' Higher Income Ad.  Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, and on the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**106.** Plaintiff Jose Vasquez Baires was at all relevant times a resident of Pomona, California. Plaintiff enrolled at DeVry March 1, 2010, paid tuition and associated costs of attending DeVry, and graduated October 27, 2013 with a Bachelor of Science degree in Computer Information Systems. Plaintiff attended classes at the DeVry Pomona campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2010, on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on seeing the 90% Representation on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student and scheduled an on campus appointment at the DeVry Pomona, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately 2010 during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90%

Representation encountered in the DeVry website as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on campus. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**107.** Plaintiff Jennifer Nichols was at all relevant times a resident of Crestline, California. Plaintiff enrolled at DeVry in August 2015, paid tuition and associated costs of attending DeVry, and graduated in September 2017 with an Associates in Accounting degree. Plaintiff attended classes at the DeVry Colton, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately August 2015 in a DeVry television commercial. Plaintiff recalls the message from DeVry television commercials that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Colton, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately August 2015 at the DeVry Colton, California campus during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed by the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in

SECOND AMENDED COMPLAINT FOR DAMAGES                    4:19-CV-04079-JSW

1   DeVry television commercials, posters around the DeVry Colton campus, during new student

2   orientation and from advisors.  Plaintiff also relied on this repetition of the 90% Representation,

3   confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry.

4   Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of

5   graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order

6   to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs

7   they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in

8   their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs

9   after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the

10  time they graduated, found jobs that could be reasonably considered "in their field" is significantly

11  smaller than 90%.

12       **108.**  Plaintiff Alicia Cretaro was at all relevant times a resident of San Diego, California.

13  Plaintiff enrolled at DeVry in January 2009, paid tuition and associated costs of attending DeVry,

14  and graduated in June 2013 with a Bachelor of Science degree in Business Administration. Plaintiff

15  attended classes at the DeVry San Diego, California campus and online. Plaintiff initially

16  encountered Defendants' Standard 90% Ad in September-October of 2008 at a career fair at Rock

17  Church in San Diego, California. The DeVry representative gave Plaintiff a brochure that

18  contained the 90% Representation.  Plaintiff recalls the message from the DeVry brochure that

19  90% of DeVry graduates were employed in their field of study within six months of graduation.

20  Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation

21  on the DeVry brochure. Plaintiff contacted DeVry about potentially becoming a student and

22  scheduled an appointment at the DeVry San Diego, California campus. Plaintiff then met with a

23  DeVry representative who reiterated the 90% Representation, in approximately September-

24  October of 2008, at the DeVry San Diego campus during a campus visit. The DeVry representative

25  did not in any way limit or qualify the statement. In reliance on the 90% Representation

26

27

28

encountered in the DeVry brochure as confirmed by the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on posters around the DeVry San Diego campus, from advisors in the financial aid office, and in DeVry television commercials.  Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**109.**  Plaintiff Shaniqua Raines was at all relevant times a resident of San Diego, California. Plaintiff enrolled at DeVry in spring 2012, paid tuition and associated costs of attending DeVry, and graduated in 2014 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry San Diego, California campus. Plaintiff initially encountered Defendants' Standard 90% Ad in the fall of 2011, through DeVry television commercials. Plaintiff recalls the message from the DeVry television commercials that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry San Diego, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation, in approximately spring 2012 at the DeVry

107

San Diego campus during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the DeVry television commercials as confirmed by the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation from student advisors, student coaches, on bulletin boards around the DeVry San Diego campus, during the Career Development course and in DeVry television commercials, and also encountered Defendants' Higher Income Ad.  Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, and the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**110.**   Plaintiff Rico-Kalie Hayes was at all relevant times a resident of Palmdale and Victorville, California. Plaintiff enrolled at DeVry in August 2010, paid tuition and associated costs of attending DeVry, and graduated in August 2016 with a Bachelor of Science degree in Computer Engineering Technology. Plaintiff attended classes at the DeVry Palmdale, Sherman Oaks, Pomona and Long Beach, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in late spring/early summer 2010 through DeVry television commercials. Plaintiff recalls the message from the DeVry television commercials that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry

television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Palmdale, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately summer 2010. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed by the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on posters around each of the DeVry campuses that he attended. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**111.** Plaintiff Steve Sierra was at all relevant times a resident of Hacienda Heights, Ontario, La Puente and Whittier, California. Plaintiff enrolled at DeVry July 6, 2009, paid tuition and associated costs of attending DeVry, and graduated June 26, 2011 with a Bachelor of Science degree in Technical Management, and August 27, 2017 with a Master of Business Administration degree. Plaintiff attended classes at the DeVry Pomona, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately April 2009 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on seeing the 90% Representation on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at

the DeVry Pomona, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately May 2009 at the DeVry Pomona, California campus during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in radio advertisements, television commercials and during the Career Development class.  Plaintiff also encountered Defendants' Higher Income Ad. Plaintiff relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, and on the Higher Income Ad, in choosing to remain a student at DeVry through graduation. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**112.**  Plaintiff Monica Ordaz was at all relevant times a resident of Palmdale, California. Plaintiff enrolled at DeVry in summer 2009, paid tuition and associated costs of attending DeVry, and graduated in March 2014 with an Associate in Web Graphic Design degree. Plaintiff attended classes at the Palmdale, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately spring/summer 2009 in a DeVry television commercial. Plaintiff recalls the message from DeVry television commercials that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into

SECOND AMENDED COMPLAINT FOR DAMAGES                           4:19-CV-04079-JSW

becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Palmdale campus.   While sitting in the waiting room of the enrollment office at the Palmdale campus, Plaintiff saw a looping video being played that contained the message that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff then met with a DeVry representative who reiterated the 90% Representation at the Palmdale campus in summer 2009.  The DeVry advisor did not in any way limit or qualify the statement. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on posters around the Palmdale campus, in television commercials, and from DeVry counselors. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry.  Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**113.**   Plaintiff Jeffrey Parker was at all relevant times a resident of Newark, California. Plaintiff enrolled at DeVry in January 2009, paid tuition and associated costs of attending DeVry, and graduated in October 2012 with an Associate in Electronic and Computer Technology degree. Plaintiff attended classes at the Fremont, California campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately September 2008 in DeVry television

commercials. Plaintiff recalls the message in the DeVry television commercials that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials. In January 2009, Plaintiff met with a DeVry representative for a campus tour and presentation at the Fremont, California campus. The DeVry representative reiterated the 90% Representation and gave Plaintiff a brochure that contained the 90% Representation.  The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed by the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation from faculty members during the Career Development class, from advisors, on posters and brochures around the Fremont campus, and on the DeVry website. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**114.** Plaintiff Alain Cortave was at all relevant times a resident of Palmdale, California. Plaintiff enrolled at DeVry in summer 2010, paid tuition and associated costs of attending DeVry, and graduated in 2014 with a Bachelor of Science degree in Electronic Engineering Technology.

Plaintiff attended classes at the DeVry Palmdale and Sherman Oaks, California campuses. Plaintiff initially encountered Defendants' Standard 90% Ad during his senior year of high school from a DeVry recruiter who visited his high school. The recruiter showed a PowerPoint presentation that included the 90% Representation. Plaintiff recalls the message from the DeVry recruiter and PowerPoint presentation that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff gave the DeVry recruiter his contact information in order to receive more information about becoming a student at DeVry. Plaintiff was contacted by DeVry and scheduled a meeting with a DeVry representative at the Palmdale, California campus in summer 2010. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately summer 2010 at the DeVry Fremont, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation from the DeVry recruiter and PowerPoint presentation as confirmed in the meeting with the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation from advisors, student coaches, on bulletin boards around the DeVry Palmdale campus, from professors during the Career Development course, and in television commercials, and also encountered Defendants' Higher Income Ad.  Plaintiff relied on this repetition of the 90% Representation, and the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be

reasonably considered "in their field" is significantly smaller than 90%.

**115.** Plaintiff Amir Awaad was at all relevant times a resident of San Diego, Anaheim and Los Angeles, California. Plaintiff enrolled at DeVry in fall 2013, paid tuition and associated costs of attending DeVry, and graduated in June 2017 with a Bachelor of Science degree in Computer Science. Plaintiff attended classes at the DeVry Long Beach, California campus. Plaintiff initially encountered Defendants' Standard 90% Ad in fall 2012 through television commercials and Facebook ads. Plaintiff recalls the message in the DeVry television commercials and Facebook ads that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials and Facebook ads. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Long Beach, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in fall 2012 at the DeVry Long Beach, California campus during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials and Facebook ads as confirmed by the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation from student advisors, student coaches, on bulletin boards around the DeVry Long Beach campus, during the Career Development course and in television commercials, and also encountered Defendants' Higher Income Ad.  Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, and the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior

to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

116. Plaintiff Michael Coschigano was at all relevant times a resident of San Diego and Los Angeles, California. Plaintiff enrolled at DeVry in June 2012, paid tuition and associated costs of attending DeVry, and graduated in 2014 with a Bachelor of Science degree in Technical Management, and in 2016 with a Master of Business Administration degree. Plaintiff attended classes at the DeVry San Diego and Sherman Oaks, California campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in early 2012 in a DeVry television commercial. Plaintiff recalls the message from DeVry television commercials that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry San Diego, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in 2012 at the DeVry San Diego campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed by the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in flyers and brochures around both the San Diego and Sherman Oaks, California campuses, and in television commercials, and also encountered Defendants' Higher Income Ad. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, and the Higher Income

115

Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

117.   Plaintiff Luis Moreno was at all relevant times a resident of Baldwin Park, California. Plaintiff enrolled at DeVry in July 2009, paid tuition and associated costs of attending DeVry, and graduated in June 2013 with a Bachelor of Science degree in Network and Communication Management. Plaintiff attended classes at the DeVry Pomona and Alhambra, California campuses and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately February 2009 from a DeVry recruiter that came to his high school. Plaintiff recalls the message from the DeVry recruiter that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on hearing the 90% Representation from the DeVry recruiter. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Pomona, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately May 2008 at the DeVry Pomona, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered from the DeVry recruiter as confirmed by the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on postings in the hallways of the campuses, in television commercials, in

radio advertisements, on the DeVry student portal login page, and during the Career Development course, and also encountered Defendants' Higher Income Ad. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, and the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**118.**  Plaintiff Jonet Martin was at all relevant times a resident of Bakersfield, California. Plaintiff enrolled at DeVry in summer 2012, paid tuition and associated costs of attending DeVry, and graduated in 2014 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry Bakersfield, California campus. Plaintiff initially encountered Defendants' Standard 90% Ad in spring 2012 from a DeVry recruiter during a Career Day that she attended. Plaintiff recalls the message from the DeVry recruiter that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on hearing the 90% Representation from the DeVry recruiter. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Bakersfield, California campus. Plaintiff then met with a DeVry representative who reiterated the 90% Representation in approximately spring 2012 at the DeVry Bakersfield, California campus, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered through the DeVry

recruiter as confirmed by the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation from student advisors, student coaches, on bulletin boards around the DeVry Bakersfield campus, in DeVry television commercials, and also encountered Defendants' Higher Income Ad.  Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, and the Higher Income Ad, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**119**. Defendant Adtalem Education Group, Inc. ("Adtalem") is a publicly traded Delaware corporation with its principle place of business at 3005 Highland Parkway, Downers Grove, Illinois 60515.  Adtalem was formerly known as DeVry Education Group, Inc., which was formerly known as DeVry, Inc.  Adtalem transacts or has transacted business in this district and throughout the United States.  At all times material to this Complaint, with respect to the acts and practices of DeVry University, Inc. identified below, Adtalem dominated or controlled those acts and practices, knew of or approved those acts and practices, ratified those acts and practices, and/or benefitted from those acts and practices. Adtalem disseminated, controlled dissemination and /or ratified dissemination of the challenged advertisements. In addition, upon information and belief, based on *City of Hialeah Emps.' Ret. Sys. v. Begley*, C.A. No. 2017-0463-JTL, 2018 WL 1912840, at *2 (Del. Ch. Apr. 20, 2018), members of Adtalem's board of directors "*in fact knew* about the misleading nature of DeVry's advertising campaign and *consciously chose* to continue making

1   misrepresentations that violated federal and state law in order to attract students."

2      **120.**  Defendant DeVry University, Inc., including its Keller Graduate School of

3   Management ("DeVry"), is a Delaware corporation that is a subsidiary of Adtalem, with its

4   principle place of business at 3005 Highland Parkway, Downers Grove, Illinois 60515.  DeVry

5   transacts or has transacted business in this district and throughout the United States.  At all times

6   material to this Complaint, acting alone or in concert with others, DeVry has advertised, marketed,

7   distributed, or sold educational products and services to consumers, throughout the United States,

8   including to Plaintiffs in the state of California. As a for-profit private college operating in

9   California, DeVry is subject to the provisions of the California Postsecondary Education Act of

10   2009, Cal. Education Code §§ 94700, *et seq*.

11      **121.**  Plaintiffs are informed and believe that DOES 1 through 10 are corporations,

12   individuals, limited liability partnerships, limited liability companies, general partnerships, sole

13   proprietorships or other business entities or organizations of a nature not currently known to

14   Plaintiffs.

15      **122.**  Plaintiffs are unaware of the true names of Defendants DOES 1 through 10.

16   Plaintiffs sue said defendants by said fictitious names, and will amend this complaint when the

17   true names and capacities are ascertained or when such facts pertaining to liability are ascertained,

18   or as permitted by law or by the Court.  Plaintiffs are informed and believe that each of the

19   fictitiously named Defendants is in some manner responsible for the events and allegations set

20   forth in this complaint.

21      **123.**  Plaintiffs are informed and believe, and based thereon allege that at all relevant

22   times, each Defendant was an employer, was the principal, agent, partner, joint venturer, officer,

23   director, controlling shareholder, subsidiary affiliate, parent corporation, successor in interest

24   and/or predecessor in interest of  some or all of the other Defendants, and was engaged with some

25   or all of the other Defendants in a joint enterprise for profit and bore such other relationships to

26   some or all of the other Defendants so as to be liable for their conduct with respect to the matters

27   alleged in this complaint.

28

**124.** Plaintiffs are further informed and believe and thereon allege that each Defendant acted pursuant to and within the scope of the relationship alleged above, and that at all relevant times, each Defendant knew or should have known about, or authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants. As used in this complaint "Defendant" means "Defendants and each of them," and refers to the Defendants named in the particular cause of action, Adtalem and DeVry, and DOES 1 through 10.

**125.** At all times mentioned herein, each Defendant was the co-conspirator, agent, servant, employee, and/or joint venturer of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, and/or joint venture and with the permission and consent and knowledge of each of the other Defendants.

**126.** Plaintiffs make the allegations in this complaint without any admission that, as to any particular allegation, Plaintiffs bear the burden of pleading, proving, or persuading, and Plaintiffs reserve all of their rights to plead in the alternative.

**127.** Adtalem, DeVry and DOES 1 through 10 are collectively referred to as "Defendants" in this Complaint.

## FACTS COMMON TO CAUSES OF ACTION

**128.** To induce prospective students to purchase DeVry educational products and services, Defendants have disseminated, or caused to be disseminated, advertisements for their educational products and services in various formats, including but not limited to, television commercials, websites, YouTube videos, brochures, radio advertisements, social media platforms, print advertisements and through in-person representations made by DeVry employees, agents and/or representatives.

**129.** Since at least 2008, Defendants' advertisements have been widely disseminated throughout the United States including within the state of California and this federal district.[2]

---

[2] Upon information and belief, based on the Department of Education's Notice of Intent to Limit, sent to DeVry University on January 27, 2016 after an extensive investigation, "The specific representation that forms the basis of this action was highlighted in DeVry's *We Major in Careers* campaign . . . which reflected more than a year's worth of in-depth consumer, marketplace, and brand research by DeVry, represented a conscious decision by DeVry to make certain

**130.** Defendants have widely disseminated advertisements and claims containing the same or substantially similar statements and depictions pertaining to the Standard 90% Ad and the Higher Income Ad to induce prospective students to purchase DeVry educational products and services.

**131.** Plaintiffs were persuaded to purchase DeVry's educational products and services, took classes at Defendants' locations in California, and some attended DeVry locations within the jurisdiction of the United States District Court for the Northern District of California, San Jose Division.

**132.** Adtalem has at all relevant times operated DeVry, including its Keller Graduate School of Management, a private, for-profit postsecondary educational institution with campuses throughout the United States, and at times has had as many as 96 campuses. DeVry also offered online classes and degree programs.

**133.** Annual new-student enrollment between 2008 and 2014 ranged from approximately 29,000 to 49,000. More than 870,000 students have reportedly enrolled at DeVry since 1975.

**134.** Adtalem's total gross revenues between 2008 and mid-2015 reportedly exceeded $14.5 billion. DeVry's gross revenues between 2008 and mid-2015 exceeded $8.6 billion.

**135.** In each fiscal year between and including 2011 and 2014, DeVry spent over $135 million on advertising, marketing, or other promotion of its educational products and services.

**136.** On July 30, 2012 the U.S. Senate issued a report following its investigation of for-profit colleges and universities, titled "For Profit Higher Education: The Failure to Safeguard the Federal Investment and Ensure Student Success"[3] (the "2012 Senate Report").

**137.** According to the 2012 Senate Report, in 2009 DeVry allocated 19.7% of its total

---

representations to students and prospective students for marketing and recruitment purposes." The Department further noted that the campaign was "developed by Chicago-based global brand powerhouse The Marketing Store."

[3] The full congressional report can be accessed at
https://www.help.senate.gov/imo/media/for_profit_report/PartI.pdf

revenue, or $288 million, to marketing. The report noted that, "DeVry spent $2,989 per student on instruction in 2009, compared to $4,054 per student on marketing." According to the Adtalem July 2009 Annual Report to Investors, "a full-time student enrolling in the five-term undergraduate network systems administration program will pay total tuition ranging from $34,260 to $35,815. A full-time student enrolled in the eight term undergraduate business administration program will pay total tuition ranging from $60,330 to $63,070, including the application fee and tuition deposit."

**138.** The 2012 Senate Report also found that, "[w]hile for-profit education companies employ large numbers of recruiters to enroll new students, the same companies frequently employ far less staff to provide tutoring, remedial services or career counseling and placement. In 2010, with 128,676 students, DeVry employed 2,350 recruiters, 231 career services employees and 1,438 student services employees. That means that each career counselor was responsible for 557 students and each student staffer was responsible for 89 students, but the company employed one recruiter for every 52 students."

**139.** According to the 2012 Senate Report, "Although titled 'enrollment advisors' or 'enrollment counselors,' an internal document makes the job function of these DeVry employees clear: 'This is a sales position'" finding that "At DeVry recruiters are encouraged to consider 'how else do you think you can create urgency with a student?' Recruiting materials counsel recruiters to use tactics like 'the Tie Down.' The purpose of such a technique is 'to get the prospect to say yes as many times as you possibly can throughout the call so that when you ask for the final yes it almost seems ridiculous that they would say no.'" The report further noted that "One pervasive sales technique [at DeVry] is to manipulate a prospective student's emotions as a strategy to sell an enrollment contract."

**140.** The 2012 Senate Report also found that in 2007 (the year before DeVry launched its aggressive and deceptive marketing campaign highlighting its Standard 90% Ad), DeVry generated profits of $102.3 million; by 2010 (two years into its aggressive and deceptive marketing campaign) profits had quadrupled to $410.9 million.

141.  To continue receiving and maximizing the amount of Title IV federal funding it received, Defendants engaged in illegal, unfair and deceptive conduct in the form of its fraudulent marketing scheme, as set forth herein, to further their goal of enrolling as many students as possible in its programs, all in violation of the California Private Postsecondary Education Act of 2009, because Defendants made promises or guarantees that overstated the employment and/or income prospects of its graduates through its deceptive  marketing practices. *See* Cal. Education Code §§ 94700, *et seq*.

142.  Defendants misrepresented the benefits of obtaining a degree from DeVry in advertising, marketing, or other promotion of educational products and services. The advertising, marketing, or other promotion included statements such as "90% of all graduates in the active job market had careers in their fields within six months" and "90% of our **grads** actively seeking employment **had careers** in 6 months." Defendants also targeted Spanish language markets with similar statements, such as "el 90% de nuestros **graduados** que buscaron empleo de forma activa **ejercían su carrera** en 6 meses."

143.  Although Defendants slightly varied the wording of the 90% Representation over the course of its 8-year run, the delivered message was consistent—that a very high percentage (90%) of DeVry graduates obtained a job in their field of study within six months of graduation. These representations included slight variations such as:

    a.   "As a result of obtaining a DeVry degree, 90% of the people who have graduated from DeVry since 1975 and were actively seeking employment started a job in their field of study within 6 months of graduation."[4]

    b.   "As a result of obtaining a DeVry degree, the vast majority of the 265, 869 undergraduate students who have graduated from DeVry since 1975 started a job in their field of study within 6 months of graduation."[5]

---

[4] Source: Federal Trade Commission Civil Investigative Demand to DeVry University, issued May 6, 2016.

[5] *Id*.

SECOND AMENDED COMPLAINT FOR DAMAGES        4:19-CV-04079-JSW

     c.  "As a result of obtaining a DeVry degree, 90% of the people who graduated from DeVry in 2012 and were actively seeking employment started a job in their field of study within 6 months of graduation." (Television commercial entitled "Graduation Present"; Television commercial titled "This is the Guy Graduating")[6]

     d.  "In 2012, 90% of DeVry grads actively seeking employment had careers in their field of study within six months of graduation."[7]

     e.  "More than 90% of DeVry University graduates who actively pursue employment hold positions in their chosen field within 6 months of graduation. This means that students earn more than a degree at DeVry University."[8]

     f.  "90% of our grads actively seeking employment had careers in 6 months."[9]

     g.  "More than 90% of DeVry graduates system-wide in the active job market are employed in their field of study within 6 months of graduation."[10]

**144.** While the wording of DeVry's false and deceptive 90% Ads may have varied slightly throughout the course of the 8-year *We Major in Careers* marketing campaign, prospective students received a consistent message—one which touted DeVry's job placement success rate (90%) to induce prospective students to enroll.

**145.** The 90% Representations were made through various means such as television commercials, Internet webpages, YouTube, brochures, print advertisements, emails, radio advertisements, social media platforms and in person by Defendants' employees, agents and/or

---

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

SECOND AMENDED COMPLAINT FOR DAMAGES         4:19-CV-04079-JSW

representatives.

146.   Upon information and belief, based on Adtalem's 10K filings with the SEC, DeVry initiated meetings "through phone calls, mailings, and invitations to site-based workshops or other events to improve the rate at which such applicants begin their program of study." Prospective students would meet with an admissions advisor or representative, who touted the 90% Representation as a sales tactic, in an effort to induce prospective students to enroll at DeVry. *See* Defendant Adtalem's Form 10K Filing, dated June 30, 2012, at 18, available at: https://seekingalpha.com/filing/902334.

147.   Consistent with the sales formula described above, every Plaintiff has alleged some encounter with Defendants' Standard 90% Ad followed by a meeting, either in person or by telephone, with a DeVry employee, agent or representative who reiterated a variation of the message of the Standard 90% Ad that 90% of DeVry graduates obtained careers in their field within six months of graduation. Although the Plaintiffs have alleged that statements of the 90% Representation were made directly to them by DeVry employees, agents and representatives , for the purpose of satisfying the pleading requirements of *Bell Atlantic Corp. v. Twombly*, the "who" alleged by Plaintiffs is the Defendants acting through the employees, agents, and/or representatives of DeVry. *See generally Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

148.   Defendants also represented that DeVry graduates would earn more money, as compared to the graduates of other colleges and universities, with statements such as "An education that pays" and "One year after graduation, DeVry University grads report earning 15% more than median earnings reported by all other bachelor's degree graduates."

A.   **Defendant Adtalem Controlled, Approved, Ratified and Benefitted From DeVry's False and Deceptive Marketing Campaign**

*i. The Role of Adtalem Executives*

149.   At all relevant times, Defendant Adtalem dominated, controlled or ratified the acts and practices of its subsidiary, DeVry, including the implementation of the *We Major In Careers* marketing campaign, highlighting the false and deceptive 90% Representation, and the Higher Earnings Representation. Defendant Adtalem knew of or approved those acts and practices,

ratified those acts and practices, and/or benefitted from those acts and practices. As shown below, there is evidence that Defendant Adtalem disseminated and/or controlled the dissemination of the challenged advertisements and had knowledge of their falsity.

**150.** Upon information and belief, based on information[11] uncovered by Plaintiffs' counsel in *Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, *et al.*, Third Amended Complaint [Doc. 84] Case No. 16-cv-05198 (N.D. Ill Jan. 29, 2018), high-level corporate officers and executives of Defendant Adtalem[12] knew the 90% Representation was false and/or made with reckless disregard for the truth and nonetheless continued to exploit DeVry's false and deceptive *We Major in Careers* marketing campaign, highlighting its false 90% Representation, as a deliberate strategy  to boost  student enrollment and maximize profits for Adtalem's shareholders.[13]

**151.** It is important to note that *Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, *et al.* was reported as settled on May 28, 2019, after Defendants' 12(b)(6)

---

[11] The information uncovered by Plaintiffs' counsel in *Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, *et al.* was obtained after an extensive investigation and review of relevant FTC and DOE documents and statements from 20 confidential witnesses—former DeVry employees who provided confidential statements describing how, during their tenure, the Company gamed the misleading DeVry graduate job placement and salary statistics in order to boost student enrollment and maximize profits. After assessing this information, the court denied the Defendants' 12(b)(6) motion to dismiss, holding that the Plaintiffs adequately pleaded claims pertaining to the falsity of DeVry's 90% Ad, noting this evidence was "rendered in sufficient detail to afford them a high degree of reliability" and adequately "alleged widespread and pervasive inflation of job placement rates.

[12] Only four months after DeVry Education Group, Inc. settled with the FTC and DOE, the company announced it would change its name to Adtalem Global Education, Inc. in May 2017. Although the Company's stated purpose for the name change was to highlight its broadened, "education offerings and geographic reach," media outlets connected the name change to the Company's alleged manipulation of its job statistics given the proximity in time to DeVry's settlement with the FTC regarding allegations that the Company misled tens of thousands of students about their post-graduation job and income prospects. *See, e.g.*, http://www.chicagotribune.com/business/ct-devry-name-change-adtalem-20170524-story.html;https://www.bizjournals.com/chicago/news/2017/05/24/devry-university-parent companychanging-its-name.html

[13] At all relevant times, DeVry's common stock traded on the New York Stock Exchange under the ticker symbol "DV".

SECOND AMENDED COMPLAINT FOR DAMAGES                                    4:19-CV-04079-JSW

motion to dismiss was denied—where the court held that Plaintiffs adequately pleaded claims of the falsity of 90% Representation in the context of securities fraud allegations governed by a heightened pleading standard that requires a showing of scienter, a standard more onerous than the standard applicable to this Complaint. The evidentiary support presented by Plaintiffs in that case, which the court held was "rendered in sufficient detail to afford them a high degree of reliability" and adequately "alleged widespread and pervasive inflation of job placement rates . . . and numerous serious government investigations into that problem" are particularly enlightening for this case. *See Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, *et al.*, Order on Motion to Dismiss [Doc. 113], Case No. 16-cv-05198 (N.D. Ill. Dec. 29, 2018).

152. Daniel Hamburger ("Hamburger") served at all relevant times as President and Chief Executive Officer of Adtalem, ultimately leaving those roles on May 24, 2016.

153. Daniel J. Wiggins ("Wiggins") served as Adtalem Senior Vice President and Chief Financial Officer from January 3, 2012 to May 31, 2016. Wiggins also served as Treasurer from January 3, 2012 until early 2015.

154. Patrick J. Unzicker ("Unzicker") served as Adtalem Vice President, Finance and Chief Accounting Officer from March 1, 2012 to May 31, 2016. In March 2015, Unzicker assumed the role of Treasurer and since May 31, 2016 has also served as the Company's Senior Vice President, Chief Financial Officer and Treasurer.

155. Richard M. Gunst ("Gunst") served as Adtalem Chief Financial Officer from 2006 until January 2, 2012.

156. Defendant Adtalem executives Hamburger, Wiggins, Unzicker, and Gunst knew, or were at least reckless in not knowing, that DeVry's statements with respect to the graduate employment statistics were false and misleading when made. Hamburger, Wiggins, Unzicker, and Gunst, because of their high-ranking positions and direct involvement in the everyday business of Defendant Adtalem, directly participated in the management of Adtalem's operations, including its public reporting functions, had the ability to, and did control, Adtalem's conduct, and were privy to confidential information concerning DeVry and its business, operations and financial

statements.

**157.** Upon information and belief, based on information[14] uncovered by Plaintiffs' counsel in *Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, *et al.*, these Adtalem executives were directly involved in controlling the content of, and in drafting, reviewing, publishing and/or disseminating the false and misleading statements and information alleged herein, in an effort to boost student enrollment and maximize profits, where the false and deceptive 90% Representation and Higher Earnings Representation were used not only in advertisements to attract students, but also highlighted by these executives in SEC filings and other investor-oriented Company publications[15], for the benefit of Defendant Adtalem.[16]

**158.** Moreover, upon information and belief, based on based on information[17] uncovered

---

[14] The information uncovered by Plaintiffs' counsel in *Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, *et al.* was obtained after an extensive investigation and review of relevant FTC and DOE documents and statements from 20 confidential witnesses—former DeVry employees who provided confidential statements describing how, during their tenure, the Company gamed the misleading DeVry graduate job placement and salary statistics in order to boost student enrollment and maximize profits. After assessing this information, the court denied Defendants' 12(b)(6) motion to dismiss, holding that Plaintiffs adequately pleaded claims pertaining to the falsity of DeVry's 90% Representation, noting this evidence was "rendered in sufficient detail to afford them a high degree of reliability" and adequately "alleged widespread and pervasive inflation of job placement rates.

[15] Such filings and publications by Adtalem executives, containing DeVry's false and deceptive 90% Representation and Higher Earnings Representation include Forms 10-Q filed with the SEC between 2011 to 2015, Forms 10K filed with the SEC between 2011 to 2015, Adtalem Annual Reports issued between at least 2012 to 2015, press releases and communications with securities analysts.

[16] For instance, one securities analyst wrote, "'Due to DV undergrad's long history of >$40K starting salaries, 90% placement rates, and relatively low regulatory issues- we think it['s significantly undervalued within DV overall.' (Deutsche Bank Markets Research, June 6, 2012)." *Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, *et al.*, Third Amended Complaint at 42 [Doc. 84], Case No. 16-cv-05198 (N.D. Ill. Dec. 29, 2018).

[17] The information uncovered by Plaintiffs' counsel in *Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, *et al.* was obtained after an extensive investigation and review of relevant FTC and DOE documents and statements from 20 confidential witnesses—former DeVry employees who provided confidential statements describing how, during their tenure, the Company gamed the misleading DeVry graduate job placement and salary statistics in order to boost student enrollment and maximize profits. After assessing this information, the court denied Defendants' 12(b)(6) motion to dismiss, holding that Plaintiffs adequately pleaded claims pertaining to the falsity of DeVry's 90% Ad, noting this evidence was "rendered in sufficient detail

by Plaintiffs' counsel in *Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc., et al.*, these Adtalem executives were aware of, or recklessly disregarded, the false and misleading statements and omissions, and approved or ratified these misstatements and omissions.

**159.**  In a joint Rule 26(f) report filed by the parties in the FTC's enforcement action on June 7, 2016, DeVry included both Adtalem CFO Gunst and David Pauldine, who was Executive Vice President of Marketing and the President of DeVry University and who reported directly to Adtalem President and CEO Hamburger, in a list of percipient witnesses likely to have discoverable information. The inclusion of Gunst and Pauldine in the list of percipient witnesses in that litigation indicates that these individuals were knowledgeable – based on the FTC's two year investigation - regarding how the Company generated the DeVry graduate employment and salary statistics.

> *ii. Internal Documents Produced by the Government Show Defendant Adtalem Had Knowledge the Statistics Were False*

**160**. Internal documents produced by the FTC to Plaintiffs' counsel in response to a FOIA request show that the government's investigation specifically sought to uncover what Adtalem's corporate executives knew about DeVry's 90% and salary misrepresentations. These internal documents included charts reflecting the scope of discovery that DeVry's attorneys agreed to produce to the FTC. The charts show that the "executive officers" of DeVry—defined to include Adtalem's "Chief Executive Officer," "Chairman," and "Chief Financial Officer," among others— were designated as custodians who agreed to produce documents on a range of topics including: "emails… which relate to completion rates, job placement rates, [and] students' pre-graduation or post-graduation income amounts"; documents concerning "minimum placement rates" reported to government agencies; and "issues raised by consumer complaints." These internal records coupled with the FTC's allegations and conclusions create an inference that documentary evidence exists showing that Adtalem executives played a role in the creation and dissemination of the 90%

---

to afford them a high degree of reliability" and adequately "alleged widespread and pervasive inflation of job placement rates.

SECOND AMENDED COMPLAINT FOR DAMAGES                                    4:19-CV-04079-JSW

1    Representation and Higher Earnings Ad.

2        **161.** Internal documents produced to Plaintiffs' counsel by the FTC in response to a

3    FOIA request also support the inference that DeVry's practices were pervasive across the

4    organization. These documents show that the FTC's investigation of DeVry's manipulation was

5    wide-ranging and encompassed all of DeVry's campuses and schools. A table produced by the

6    FTC listing negotiated modifications to discovery requests is 52 pages long, lists 64 separate

7    discovery requests and modifications, encompasses requests touching upon all of DeVry's

8    colleges, and even allows for certain requests to be fulfilled through document "sample[s] of

9    campus presidents" at specific locations.

10        **162.** Upon information and belief, based on internal documents[18] produced by the

11    Department of Education through a FOIA request to Plaintiffs' counsel in *Pension Trust Fund For*

12    *Operating Engineers v. DeVry Education Group, Inc.*, *et al*., Third Amended Complaint [Doc. 84]

13    Case No. 16-cv-05198 (N.D. Ill. Jan. 29, 2018), evidence exists showing that Adtalem executives

14    Hamburger, Wiggins, Unzicker, and Gunst either had knowledge of the falsity of the 90%

15    Representation, or were reckless regarding the falsity of the 90% Representation:

16        The documents specifically show that DeVry [now Adtalem] and its executives
         acted in bad faith and were in fact put on notice that DeVry University's job
17        placement statistics were inaccurate. For example, an internal brief submitted by
         the DoE to the Office of Hearings and Appeals describes high-level evidence
18        showing that DeVry's [Adtalem's] executives were either put on notice or were
         reckless with respect to the job placement statistics they were touting. As explained
19        in an internal brief filed by the DoE:

20
         • "[T]he violation at issue was neither unplanned nor isolated. Rather the
21             Representation was developed as part of a multi-year, national advertising

22    ────────────────────────────

23    [18] The information uncovered by Plaintiffs' counsel in *Pension Trust Fund For Operating
      Engineers v. DeVry Education Group, Inc.*, *et al*. was obtained after an extensive investigation and
24    review of relevant FTC and DOE documents and statements from 20 confidential witnesses—
      former DeVry employees who provided confidential statements describing how, during their
25    tenure, the Company gamed the misleading DeVry graduate job placement and salary statistics in
      order to boost student enrollment and maximize profits. After assessing this information, the court
26    denied Defendants' 12(b)(6) motion to dismiss, holding that Plaintiffs adequately pleaded claims
      pertaining to the falsity of DeVry's 90% Ad, noting this evidence was "rendered in sufficient detail
27    to afford them a high degree of reliability" and adequately "alleged widespread and pervasive
      inflation of job placement rates.
28

campaign that reached millions of prospective students … and that commenced only after extensive consumer and brand research. Relying on this research, DeVry [now Adtalem] made an initial decision to use, and repeated decisions to keep using, the Representation even after it certified to the Department its knowledge of, and compliance with, the substantiation requirement. Indeed, **"this was not an isolated instance, but part of a pattern whereby DeVry [now Adtalem] either intentionally or through wanton negligence" avoided clear statutory and regulatory requirements."** (emphasis added, internal citations omitted).

- *"DeVry continued to make the Representation in advertisements even *after* DeVry staff and others raised questions about DeVry's ability to substantiate the claim. For example, an internal presentation in 2008 on the efficacy of the *Careers* campaign posed questions about the sources of the Representation in seeking to establish the 'truth behind' the claim and whether it could 'substantiate' the 90 percent figure. Moreover, in February 2009, DeVry President David Pauldine posited, in an email sent on his behalf, whether DeVry should 'be looking at *alternative* messaging such that it brings the ultimate *credibility* to our employment claims.'"*

- **"And in November 2009, staff at an advertisement agency used by DeVry, Leo Burnett USA, questioned certain details of the Representation. In response, DeVry's 'Senior Consumer Insights Specialist' dismissed the concerns by affirming a response that DeVry had 'dug into these numbers 8 ways to Sunday, and there is no other clear, compelling, and compliant story.' Nevertheless, aware of both legal requirements and expressed questions and concerns about the Representation, DeVry continued to use the Representation in advertisements until after the Department asked DeVry for substantiation." (internal citations omitted).

- "DeVry made statements in response to the Substantiation Request that lacked credibility. Specifically, although DeVry claimed to have ceased making the Representation no later than January 2014, this was not true. DeVry's failure to act with candor during the investigation violated its fiduciary duty to the Department." (internal citations omitted).

- "DeVry produced to the Department a November 3, 2009 email from Drew Swinger, the "Senior Consumer Insights Specialist" for DeVry, Inc. [now Adtalem] . . . In that email chain, Lauren Rector, at [advertising agency] Leo Burnett USA inquires of Mr. Swinger about wanting to "**dig a little deeper into the 90% employment rate claims**," specifically about the "since 1975" claims. Later in the chain, Mr. Swinger confirms Jay Pauer's statement that DeVry has "dug into these numbers 8 ways to Sunday, and there is no other clear, compelling, compliant story." **Mr. Swinger also states that the 90% is not the "percent of graduates" who were employed, but rather the "percent of graduates who were in the active job market 6 months after graduation**." (emphasis added).

*Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, *et al.*, Third Amended Complaint [Doc. 84] at 166–167, Case No. 16-cv-05198 (N.D. Ill. Jan. 29, 2018) (quoting documentary evidence received from the Department of Education through a FOIA request).

**163.** The fact that the DOE described specific evidence it possessed showing that DeVry acted in bad faith with respect to the misrepresentations at issue raises the inference that Adtalem's senior executives either knew or recklessly disregarded the truthfulness of the 90% Representation. As the DoE explained, (1) DeVry engaged in a pattern of making misrepresentations; (2) Adtalem's senior executives were making presentations and sending emails about the 90% Representation at a high level about the issue as early as 2008; and (3) continued making misrepresentations after they were put on notice by both a consultant and the DOE about the falsity of the 90% Representation. These internal documents, and others described below, contribute substantially to the inference that Adtalem at least ratified and more likely played a role in the creation and dissemination of DeVry's false and misleading 90% Representation and Higher Earnings Ad.

**164.** Further, Adtalem President and CEO Hamburger specifically ratified and approved of the methodology underpinning DeVry's 90% Representation.   For example, after the FTC filed its enforcement action against DeVry, Adtalem CEO Hamburger provided detailed thoughts to investors in response to the FTC's allegations, evidencing his knowledge and approval of how DeVry calculated it statistics, stating:

> [T]here's not now nor has there ever been a national standard for calculating employment statistics. We've advocated for there to be one for all of higher education. In the absence of regulation, DeVry University designed a methodology for calculating the employment outcomes of its graduates over 40 years ago. 40 years ago. **We believe it's a very sound way of doing it.** (emphasis added).

*Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, *et al.*, Third Amended Complaint [Doc. 84] at 175, Case No. 16-cv-05198 (N.D. Ill. Jan. 29, 2018).

*iii. Information Provided by Confidential Witnesses Confirms That Adtalem Played a Role in the Creation and Dissemination of the 90% Ad and Higher Earnings Ad*

**165.** Confidential Witnesses, presented in *Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, *et al*., Third Amended Complaint [Doc. 84] Case No. 16-cv-05198 (N.D. Ill. Jan. 29, 2018) have provided additional information regarding the role that Defendant Adtalem played in approving, controlling and directing DeVry's false and deceptive marketing campaign, in an effort to boost student enrollment and maximize profits for its shareholders.

**166.** In assessing the merits and reliability of these confidential witnesses, the Court in *Pension Trust Fund For Operating Engineers* found that their statements "tend to show with a degree of particularity that there is evidence that the problems with DeVry's use of the 90% Statement, as described by the FTC in the Central District of California action, were broad in scope and magnitude, not limited to a relatively few cases of misclassification in California" and "strengthen the inference that evidence of the risk of falsity of the 90% Statement penetrated to defendants, at the top of the [Adtalem] corporate hierarchy" where the confidential witness accounts "are rendered in sufficient detail to afford them a high degree of reliability." *Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, *et al*., Order on Motion to Dismiss [Doc. 113] Case No. 16-cv-05198 (N.D. Ill. Dec. 20, 2018).

**B. Adtalem Executives Were Actively Involved In Recruiting Efforts Using DeVry's False and Deceptive Marketing Scheme**

**167.** Confidential Witness 8 (CW 8), a Senior Director of Academic Effectiveness for Adtalem from September 2013 to March 2014, reported, "[T]he numbers DeVry [now Adtalem] was producing and generating for the SEC reports were just not accurate." According to CW8, the actual numbers were different from what Defendant Adtalem reported to investors. CW8 reported that he discovered that DeVry did not have the data to back up the claim that 90% of its graduates got jobs in their field of study within six months of graduation and, in approximately April 2014, reported this to an in-house attorney who worked in Adtalem's corporate compliance department. He said that he specifically told the in-house attorney that there was no data to substantiate DeVry's

job placement rates and the 90% Representation. He told the attorney "you don't have the data to calculate this." When asked if Adtalem President and CEO Daniel Hamburger knew about his findings, CW8 responded that he definitely did. He knew this because Groenwald, his boss, told him in a meeting that she discussed CW8's findings with Hamburger. CW8 added that Groenwald and Hamburger met all the time. CW8 was fired a month after meeting with Adtalem's in-house attorney and said that his meeting with the compliance department and the attorney led to his termination.

**168.** CW8 also stated that Adtalem President and CEO Hamburger wanted to speak with him after CW8 authored a report about factors critical to the success of a for-profit college. CW8 understood that Hamburger had seen his report and wanted to meet with him about it. CW8 was later fired after he warned Adtalem that the Company was generating numbers for SEC reports that were not accurate.

**169.** CW18 said he attended a meeting with Adtalem CEO Daniel Hamburger during which the 90% employment rate was discussed.

**170.** Confidential Witness 15 (CW15) was employed by Adtalem and Carrington College from February 2009 to January 2017, as DeVry's Metro President in the Phoenix market from 2009 to 2014, then as Senior Director of Operations for Carrington College from 2014 to 2017, and had direct contact with Adtalem President and CEO Daniel Hamburger. **CW15 stated that Daniel Hamburger likely approved that 90% advertising because he was very proactive.**

**171.** CW15 also described Adtalem CEO Hamburger's hands-on management style, recounting how he would receive emails from "Daniel [Hamburger] where he would say that **he was reviewing 'your statistics' or 'Hey, I was listening to an enrollment call.'" Hamburger would tell CW15 what he thought of a particular statistic or how to instruct his employees to handle enrollment calls in the future. CW15 recalled that Hamburger came to his campus at least five times during his tenure as Metro President in Phoenix.**

**172.** Confidential Witness 19 (CW19) was employed by Adtalem as Vice President of Business Services/Operations from August 2009 to July 2016. He worked out of both the Oak

Brook and Downers Grove (corporate headquarters) locations in Illinois. CW19 reported directly to Adtalem Chief Information Officer Chris Nash, who reported to Adtalem CEO Daniel Hamburger. CW 19 participated in many meetings involving senior leadership. According to CW19, **DeVry student graduate employment metrics was a topic of discussion in meetings he attended. These meetings included Quarterly Leadership Meetings, in which graduate employment metrics were discussed. CW19 said that Adtalem CEO Hamburger, Adtalem CFO Daniel Wiggins, Adtalem CFO Richard Gunst (Wiggins's predecessor), and Adtalem CAO Patrick Unzicker all participated regularly in Quarterly Leadership Meetings.** CW19 also recalled that Madeleine Slutsky, the Vice President of Career and Student Services attended the Quarterly Leadership Meetings. Notably, Slutsky was repeatedly listed as a document custodian concerning topics related to job placement rates in internal discovery documents Plaintiffs received from the FTC through a FOIA request.

173.    In addition, Confidential Witness 20 (CW20) was the former Vice President of Academic Affairs and Chief Academic Officer for Adtalem's Chamberlain College from July 2011 to June 2017, was primarily based in Downers Grove, Illinois at Adtalem's headquarters and reported to Chamberlain College President Susan Groenwald, who reported to Adtalem CEO Daniel Hamburger. CW20 participated in meetings with CEO Hamburger during which issues related to job placement and accreditation at DeVry were discussed. **CW20 recalled that DeVry had an ongoing issue related to job placement and accreditation. CW20 also specifically recalled that DeVry was not aggregating data on institutional effectiveness across its different programs, and this lack of data was an issue discussed during meetings led by Hamburger in 2012, 2013, and 2014.**

### C. Numerous Government Investigations, Enforcement Actions and Sanctions Underscore the Magnitude of DeVry's Fraudulent Marketing Scheme

174.    Defendants' actions led to a lawsuit filed by the Federal Trade Commission to enjoin the deceptive trade practices. *See Federal Trade Commission v. DeVry Education Group, Inc., et al.,* Case No. 2:16-cv-579, C.D. Cal., filed January 27, 2016 (the "FTC case").

175.    The FTC case was reported as settled in December 2016.

**176.** Upon information and belief, based on the May 2, 2016 hearing transcript in the FTC case, the FTC spent two years investigating the case before filing suit against Defendants.

**177.** Upon information and belief, based on the August 30, 2016 hearing transcript in the FTC case, Defendants produced more than 2 million pages of documents to the FTC.

**178.** Upon information and belief, the Standard 90% Ad and the Higher Earnings Ad were false and misleading.[19] The FTC case was reported as settled in December 2016. The settlement included a permanent injunction against "[m]aking any representation, expressly or by implication, about the benefit of any educational product or service, or the success or likely success of any student or graduate, unless the representation is non-misleading, and, at the time such representation is made, DeVry possesses and relies upon Competent and Reliable Evidence that is sufficient to substantiate that the representation is true."

**179.** Upon information and belief, based on the allegations contained in the complaint filed in the FTC case after a two-year investigation and review of over 2 million documents produced by Defendants, in order to manufacture support for the 90% Representation, Defendants counted a substantial number of DeVry graduates who should not be counted and excluded a substantial number of graduates who should not be excluded.

**180.** Upon information and belief, based on the allegations contained in the complaint filed in the FTC case after a two-year investigation and review of over 2 million documents produced by Defendants, in order to manufacture support for the 90% Representation, Defendants included a substantial percentage of graduates who did not obtain a job as a result of earning a degree from DeVry.

**181.** Upon information and belief, based on the allegations contained in the complaint

---

[19] The information and belief supporting Plaintiffs' claims that the Standard 90% Ad and Higher Income Ad were false and misleading is based on the allegations contained in the complaint filed in the FTC case, the fact that the allegations were made after a two-year investigation by the FTC involving a document production by Defendants of over 2 million pages, the fact that counsel for the FTC were required to have a good faith basis for the allegations, the statements by counsel and the court in the May 2, 2016 and August 30, 2016 hearing transcripts from the FTC case, the fact that Defendants decided to settle the FTC case rather than move for summary judgment despite the express invitation from the court to do so, and the terms of the settlement agreement.

SECOND AMENDED COMPLAINT FOR DAMAGES                    4:19-CV-04079-JSW

filed in the FTC case after a two-year investigation and review of over 2 million documents produced by Defendants, in order to manufacture support for the 90% Representation, a significant percentage of the jobs that Defendants counted as being in the graduate's field of study include jobs that would not reasonably be considered in the graduate's field of study.

**182.** Upon information and belief, based on the allegations contained in the complaint filed in the FTC case after a two-year investigation and review of over 2 million documents produced by Defendants, in order to manufacture support for the 90% Representation, Defendants also excluded certain students from the calculation who in fact were actively seeking employment.

**183.** Upon information and belief, based on the allegations contained in the complaint filed in the FTC case after a two-year investigation and review of over 2 million documents produced by Defendants, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could reasonably be considered "in their field" is significantly smaller than 90%.

**184.** Notably, in denying Defendants' Motion to Dismiss the FTC's enforcement action, the court found that, "the Court disagrees with Defendants that Rule 9(b) requires the FTC to provide additional factual support for its allegations. [As in this Complaint], [t]he FTC does not merely allege that the 90 percent figure is false or lacks substantiation. Rather it provides three reasons that explain precisely why the statistic is problematic: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry University; (2) Defendants counted graduates who were not employed in their field of study; and (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation." The Court went on to note that, "[t]hese allegations show that the FTC's claims have factual basis and provide Defendants with adequate notice as to the FTC's reasons for believing that the employment statistic is unsubstantiated and materially false." *See* Order Denying Defendants' Motion to Dismiss Complaint [Doc. 38], *FTC v. DeVry Education Group, Inc., et al.*, Case No. CV-16-00579-MFW.

**185.** In its reasoning, the court concluded that, "[b]y alleging why the actual employment rate is 'significantly smaller than 90%' the FTC has done all that Rule 9(b) requires: it enabled

Defendants to defend this action. Defendants can now go back to their records and recalculate the employment rate . . . If the calculation produces a number that is only marginally smaller than 90 percent, then Defendants could promptly move for summary judgment." *Id*. Instead, Defendants entered into a settlement agreement with the FTC.

**186.**   Upon information and belief, based on an announcement from the Attorney General of Massachusetts, the investigation leading to that lawsuit against and settlement with DeVry found that certain DeVry programs had job placement rates as low as 52%.

**187.**   Upon information and belief, based on the May 2, 2016 and August 30, 2016 hearing transcripts from the FTC case, the FTC had more factual information from its investigation than was included in the complaint.

**188.**   Upon information and belief, based on the May 2, 2016 hearing transcript, only some "examples" of the Standard 90% Ad were included in the complaint filed in the FTC case. Counsel for the FTC, Christina V. Tusan, argued at the hearing: "We're not going to include every example. We're not required to."

**189.**   Upon information and belief, based on the allegations contained in the complaint filed in the FTC case after a two-year investigation and review of over 2 million documents produced by Defendants, Defendants' did not have a reasonable basis for making the Higher Earnings Representation.

**190.**   Upon information and belief, based on the allegations contained in the complaint filed in the FTC case after a two-year investigation and review of over 2 million documents produced by Defendants, the Higher Earnings Representation was based upon a third-party "income report." The sampling methods and methodology behind the income report gave or should have given Defendants reason to question the reliability of the conclusions and information contained in the report. Among other problems, the comparison of incomes of DeVry graduates with graduates from other schools did not adjust for significant salary drivers such as age, experience, and degree field.

**191.**   Upon information and belief, based on the allegations contained in the complaint

filed in the FTC case after a two-year investigation and review of over 2 million documents produced by Defendants, the statistics collected by DeVry from thousands of its graduates about their incomes differed significantly from the third-party's statistics, which consisted of information from only several hundred individuals per graduation year.

192.   Upon information and belief, based on the allegations contained in the complaint filed in the FTC case after a two-year investigation and review of over 2 million documents produced by Defendants, comparing the information in Defendants' own files with publicly available income data will show that DeVry graduates, one year after graduating, do not in fact earn significantly more than graduates from all other schools combined.

193.   Notably, in denying Defendants' Motion to Dismiss the FTC's enforcement action, the court found that, "these allegations are neither implausible nor insufficiently specific. [As in this Complaint], the FTC alleges, in essence, that the third-party study on which Defendants relied in making their representations compared apples to oranges. It takes no special knowledge of statistics to realize that comparing, for example the incomes of a thirty-five year old DeVry graduate with  ten years of experience and an average twenty-one-year-old college graduate with no experience could lead to misleading results . . . According to the FTC, the third-party study made precisely these types of errors in its calculations . . . these allegations are plausible and particular enough to put Defendants on notice of the FTC's basis for its claims. Neither Rule 8 nor Rule 9(b) require more at this stage of the proceedings" *Id*. The court went on to note that, "Defendants have access to the third-party study and can determine its accuracy. There is simply no need for the FTC to provide a full-blown regression analysis in the pleadings to prove that the 15 percent representations are unsubstantiated. Defendants may, of course, file a prompt motion for summary judgment." *Id*. Instead, Defendants entered into a settlement agreement with the FTC.

194.   Upon information and belief, based on the August 30, 2016 hearing transcript from the FTC case, documents in DeVry's possession and produced to the FTC will provide additional support for the allegations that the Standard 90% Ad and the Higher Earnings Representation were false and misleading. As noted by the Honorable Suzanne H. Segal during the hearing, the FTC's

1  disclosures "gave quite a bit of detail to the FTC's allegations against the Defendants and included

2  some very specific allegations and references to documents."

3      195.   In the words of the FTC's counsel, Ms. Tusan, "[t]he detailed provision we gave

4  in our initial disclosures, which went above and beyond what was required, was in response to

5  Defendants' raising of those issues with the Court and saying they were unclear of our theory of

6  the case, they felt like they needed more detail." However, the FTC's initial disclosures were

7  placed under seal in that case and that additional level of detail is not available to counsel for

8  Plaintiffs at this time.

9      196.   Upon information and belief, based on the August 30, 2016 hearing transcript from

10  the FTC case, the FTC as part of its investigation obtained "third-party documents" through

11  subpoenas that support the allegations in the complaint filed in the FTC case. However, these third

12  party documents were placed under seal in that case and that additional level of detail is not

13  available to counsel for Plaintiffs at this time.

14      197.   In the "Discovery Plan" section of the Joint Rule 26(f) Report with Errata, the FTC

15  revealed the "evidence on which [it] relies on to support its allegations that [Defendants'] 90%

16  claim was false and unsubstantiated consists of student files, summaries of graduate placement

17  information, and other documents that [DeVry] produced during [the FTC's] investigation in

18  response to a request for documents on which Defendants relied to support their claims, as well as

19  other documents [DeVry] produced, such as internal emails and presentations." *See* Joint Rule

20  26(f) Report with Errata [Doc. 50], *FTC v. DeVry Educ. Group, Inc., et al.,* Case No. 16-CV- 579-

21  MFW-SS (C.D. Cal. June 7, 2016).

22      198.   According to documents obtained by Plaintiffs' counsel in investigation of this

23  case[20], directly from the FTC through a Freedom of Information Act request, the FTC's basis for

24

25  _____

26  [20] It is important to note that, although Plaintiffs' counsel submitted a FOIA request to the FTC
   seeking access to the documents enumerated in paragraph 193 and relied on by the FTC in its

27  enforcement action, FTC Lead Attorney for the Office of General Counsel, Kamay Lafalaise,
   denied Plaintiffs' request for said documents, citing various FOIA confidentiality exemptions, and

28  instead granting access only to a redacted version of the FTC's Civil Investigative Demand issued
   to DeVry. As such, Plaintiffs have not had the benefit of reviewing the millions of pages of

the its allegation that the 90% claim was false and unsubstantiated consists of an analysis of the following documents, produced by Defendants through a Civil Investigative Demand, that the FTC's own personnel reviewed in preparation for possible litigation, including:

1. Defendants' advertisements, including television and radio commercials, websites, brochures, recruitment and enrollment presentations, social media, and brochures promoting DVU, as well as dissemination information;

2. DVU student and graduate records used to substantiate Defendants' claims, including but not limited to Graduate Registration Forms or eforms, graduate observation logs, and summary spreadsheets;

3. Training manuals, and policies and procedures, used by DVU's career services department and DVU's admissions department;

4. Audit reports, internal communications about student or graduate employment or about DVU's classification or proposed classification of student or graduate employment, and records concerning contact between students and graduates with DVU's Career Services Department;

5. Complaints, and documents generated by Defendants in response to complaints, concerning employment issues and representations alleged in the Complaint, as well as consumer injury and materiality;

6. Defendants' internal documents discussing recruitment, advertising and marketing, employment statistics (including but not limited to who was or should be counted and who was not or should not be counted), other policies of DVU's career services department, graduate incomes, and the claims at issue in the Complaint, including such documents as emails, memos, spreadsheets, and PowerPoint presentations;

7. Documents from third parties such as PayScale that Defendants relied on as the bases for their higher income claim;

8. Documents from third parties such as the National Association of Colleges and Employers relating to average or median incomes of college graduates;

9. Internal communications and communications with third parties such as CompliancePoint or Deloitte & Touche discussing the results of efforts to audit or verify DVU's employment statistics or to obtain information from graduates concerning their employment and income;

10. Communications with third parties such as advertising agencies discussing or relating to messages conveyed by, or intended to be conveyed by, advertisements that referred to DVU's employment statistics or income earned by DVU graduates;

11. Defendants' financial information, including revenue figures; Defendants' internal copy tests, alumni surveys, and other data related to the 90% and higher-income claims; and

documents known to exist and which corroborate the claims set forth herein.

SECOND AMENDED COMPLAINT FOR DAMAGES                    4:19-CV-04079-JSW

> 12. Third-party copy tests, marketing surveys or reviews and internal communications concerning these copy tests and marketing surveys or reviews.

*See also Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, Third Amended Complaint [Doc. 84] Case No. 16-cv-05198 (N.D. Ill. Jan. 29, 2018).

**199.** In addition, the lead plaintiffs' attorney in *Pension Trust Fund for Operational Engineers* obtained documents, via a FOIA request, from the U.S. Department of Education, relating to the Department's investigation into DeVry's deceptive marketing scheme. On January 27, 2016, the DoE similarly issued DeVry a Notice of Intent, informing DeVry of the DoE's intention to impose certain limitations on the participation of DeVry in programs authorized pursuant to Title IV.[21] The proposed limitations specifically related to DeVry's representations in advertising and marketing that "[s]ince 1975, 90.1% of DeVry graduates system-wide in the active job market held positions in their fields of study within 6 months of graduation" (the "Since 1975 Representation"). With regard to those representations, the DoE's Notice of Intent stated that "starting in at least 2008 and continuing until at least August 2015, DeVry made representations to students and prospective students regarding the post-graduation employment outcomes of students who graduated from DeVry over a cumulative period stretching more than 30 years. . . . Yet with respect to certain representations that were made by DeVry as part of that campaign and which continued to be made until at least August 2015, ***DeVry is unable to substantiate the truthfulness of those representations***, as is required by federal law" (emphasis added). *Id.*; *see also* Opening Brief of Federal Student Aid, *In re DeVry University*, Federal Student Aid Proceeding Docket No. 16-07-O.

**200.** After receiving thousands of documents from DeVry, the DoE concluded that: ***"this was not an isolated instance, but part of a pattern whereby DeVry either intentionally or***

---

[21] Plaintiffs in the present action have submitted a similar FOIA request to the Department of Education, seeking production of the documentary evidence supporting the DOE's enforcement action in connection with DeVry's deceptive marketing campaign; to date the DOE has not fulfilled Plaintiffs' request.

142

*through wanton negligence avoided clear statutory and regulatory requirements.”* (internal

citations omitted). *Id.; see also* Opening Brief of Federal Student Aid, *In re DeVry University*,

Federal Student Aid Proceeding Docket No. 16-07-O.

201. As a result the DOE's findings of wrongdoing, the Department imposed sanctions,

limiting DeVry's access to Title IV federal student financial aid funds, contingent upon

complying with very specific requirements to address their false and deceptive marketing scheme,

including:

- Cease publishing marketing claims that include the "Since 1975 Representation [90% Representation];"
- Cease making any representations about post-graduation employment rates without possessing and maintaining (1) graduate-specific data to substantiate those representations; and (2) documentation of the methodology used to calculate any claims. DeVry must also certify, and provide an independent certification to the Department, of its compliance with these documentation requirements;
- Post an irrevocable, five-year letter of credit of no less than $68.4 million;
- Prominently disclose, for a period of two years, a notice on its online home page regarding its failure to substantiate the "Since 1975 Representation" [90% Representation] and include the same language in new enrollment agreements for a period of five years; and
- Take steps to rid the internet of the "Since 1975 Representation" [90% Representation] (both on its own website and on websites not under its direct control).

*See* DOE Settlement Agreement with DeVry University, *In re DeVry University*, Federal Student

Aid Proceeding Docket No. 16-07-O.

202. Other governmental entities have also conducted their own investigations into

DeVry's false and deceptive marketing scheme, which highlighted the 90% Representation, with

each finding that DeVry engaged in deceptive practices, including:

- In January 2017, The New York Attorney General reached a $2.25 million settlement after its investigation into DeVry Education Group, Inc. and its subsidiaries DeVry University, Inc. and DeVry/New York, Inc. revealed that DeVry lured students with ads that exaggerated graduates' success in finding employment and contained inadequately substantiated claims about graduates' salary success (Standard 90% Ad and Higher Earnings Ad). The investigation found that DeVry's employment outcome statistics inaccurately classified a significant number of graduates as employed in

their field of study, when in reality the graduates were not working in their field.

- On July 5, 2017, DeVry University reached a settlement deal with the Massachusetts Attorney General and agreed to pay $455,000 in refunds to resolve allegations that it used deceptive job placement rates in marketing certain online programs to Massachusetts students. According to the Attorney General's investigation, DeVry made false claims concerning the employment outcomes of graduates, including on its website, in social media, print advertisements, through television commercials, telephone and in-person presentations to prospective students, that 90% of graduates who sought employment landed jobs in their field of study within six months of graduating.

- In May 2017, the Higher Learning Commission designated DeVry "under governmental investigation" after the Massachusetts Attorney General investigation revealed "fraudulent or deceptive practices". In September 2017, the HLC removed this designation after DeVry negotiated a settlement in Massachusetts and agreed to cease its deceptive marketing practices.

- In March 2016, the Veterans Administration reprimanded DeVry over the FTC and DOE's findings of deceptive marketing practices and suspended DeVry from its "Principles of Excellence" status under the G.I. Bill, a program designed to provide GI Bill users information, support, and protection while using GI Bill benefits. The VA began "cautioning GI Bill users about DeVry" and placed a warning to veterans on its website. A letter sent to DeVry by the VA's undersecretary of Economic Opportunity noted that, "The FTC findings, [Education Department] conclusions, and GI Feedback System complaints indicate that DeVry University has not acted in accordance with ... Principles of Excellence guidelines".

**203.** Defendants intended that plaintiffs rely on the 90% Representations and the Higher Earnings Representations when deciding to purchase DeVry's educational products and services, and/or to continue their studies with DeVry through graduation.

**204.** Plaintiffs reasonably relied on Defendants' representations in making their decision to purchase DeVry's educational products and services, and/or to continue their studies through graduation.

**205.** As a result of the reasonable reliance by each named Plaintiff herein, Plaintiffs incurred financial harm, and other damages.

206.   Plaintiffs' claims presented herein rise to the level of plausibility set forth in *Bell Atlantic Corp. v. Twombly* by asserting the who, what, when, where and how of the misconduct which caused Plaintiffs' damages: The "who" (Defendants, through their employees, agents, and/or representatives); the "what" (misrepresentations regarding post-graduation employment rates and income); the "when" (between 2008 and 2016); the "where" (TV, YouTube, brochures, websites, emails, radio, social media, in person); and the "how" (by miscounting three categories of graduates for the 90% Representation and unreliable sampling and methodology for the Higher Earnings Representation). *See Fed. Trade Comm'n v. DeVry Educ. Grp., Inc.*, No. CV-16-00579-MWF-SSX, 2016 WL 6821112, at *3 (C.D. Cal. May 9, 2016). *See generally Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

## FIRST CAUSE OF ACTION

## FRAUD BY MISREPRESENTATION

207.   Plaintiffs incorporate paragraphs 1 through 206 of this Complaint as though fully alleged herein.

208.   Defendants misrepresented the benefits of obtaining a degree from DeVry in advertising, marketing, or other promotion of its educational products and services. The 90% Representation, that 90% of DeVry graduates were employed in their field within six months of graduation, and the Higher Earnings Representation, that one year after graduation, DeVry University grads report earning 15% more than median earnings reported by all other bachelor's degree graduates, were made through various means such as television, internet webpages, YouTube, brochures, radio, print advertisements, and in person by Defendants' employees, agents, and/or representatives. These representations were false, misleading, and deceptive.

209.   Plaintiffs reasonably relied on Defendants' representations in deciding to enroll in and to continue their studies at DeVry through graduation. Plaintiffs did not obtain employment or a career in their field of study within six months of graduation, despite diligent efforts to secure post-graduation employment within their field of study.

210.   Defendants made the 90% Representation and Higher Earnings Representation

recklessly and without regard for the truth of said representations.

**211.** Defendants intended that Plaintiffs rely on the 90% Representation and Higher Earnings Representation when Plaintiffs enrolled and continued their studies at DeVry.

**212.** Plaintiffs reasonably relied on Defendants' 90% Representation and Higher Earnings Representation in making their decision to enroll and continue their studies at DeVry.

**213.** As a result of reasonable reliance by each named Plaintiff, Plaintiffs enrolled at and continued their studies at DeVry.

**214.** Plaintiffs did not obtain employment or a career in their field of study within six months of graduation. Plaintiffs thereby suffered financial harm and other damages.

**215.** As a result of Defendants' conduct detailed herein, Plaintiffs have been injured in that they paid tuition, purchased books and supplies, incurred debt, attended classes and suffered lost opportunity costs in reliance on Defendants' representations.

**216.** Plaintiffs' reliance on Defendants' representations was the substantial factor in causing Plaintiffs' harms.

## SECOND CAUSE OF ACTION
### FRAUD BY CONCEALMENT

**217.** Plaintiffs incorporate paragraphs 1 through 216 of this Complaint as though fully alleged herein.

**218.** Defendants made representations to Plaintiffs about the employment rate of DeVry graduates. The 90% Representation—that 90% of DeVry graduates were employed in their field of study within six months of graduation—were made through various means such as television, internet webpages, radio, YouTube, brochures, print advertisements, and in person by Defendants' employees, agents, and/or representatives.

**219.** Defendants' representations about the employment rate of DeVry graduates were false, in that Defendants applied flawed methodologies to manufacture a basis for the 90% Representation—a material fact which Defendants intentionally concealed and suppressed from Plaintiffs.

**220.**  Defendants also made representations to Plaintiffs that DeVry graduates would earn more money than graduates of other universities, with statements such as "An education that pays" and "One year after graduation, DeVry University grads report earning 15% more than median earnings reported by all other bachelor's degree graduates."

**221.**  The Higher Earnings Representation was also false in that Defendants applied flawed methodologies to manufacture a basis for their Higher Earnings Representation—a material fact which Defendants intentionally concealed and suppressed from Plaintiffs.

**222.**  Defendants were under a duty to disclose to Plaintiffs the material facts concerning the 90% Representation and the Higher Earnings Representation, as Plaintiffs purchased educational goods and services from Defendants in reliance of Defendants' representations.

**223.**  Defendants intentionally concealed or suppressed the flawed methodologies they applied to substantiate their 90% Representation and the Higher Earnings Representation, with the intent that Plaintiffs would rely on these representations in enrolling and/or continuing to attend DeVry.

**224.**  Plaintiffs did not know about the flawed methodologies used by Defendants to substantiate their 90% Representation and Higher Earnings Representation; had Plaintiffs known that flawed methodologies were applied to substantiate these representations, Plaintiffs would not have chosen to enroll at and/or continue to attend DeVry.

**225.**  Defendants had exclusive knowledge of the flawed methodologies used by Defendants to substantiate their 90% Representation and the Higher Earnings Representation and actively concealed these flawed methodologies from Plaintiffs and the general public.

**226.**  As a result of Defendants' intentional concealment or suppression of the flawed methodologies applied to substantiate their 90% Representation and their Higher Earnings Representation, Plaintiffs enrolled at and/or continued to attend DeVry.

**227.**  Plaintiffs did not obtain employment or a career in their field of study within six months of graduation. Plaintiffs thereby suffered financial harm and other damages.

228. As a result of Defendants' conduct detailed herein, Plaintiffs have been injured in that they paid tuition, purchased books and supplies, incurred debt, attended classes and suffered lost opportunity costs, in reliance on Defendants' representations, which they believed to be true and accurate given Defendants intentional concealment or suppression of material facts.

### THIRD CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION

229. Plaintiffs incorporate paragraphs 1 through 228 of this Complaint as though fully alleged herein.

230. In the course of their business, Defendants' supplied false information about the benefits of obtaining a degree from DeVry in advertising, marketing, or other promotion of their educational products and services. Defendants supplied false information about the employment rate of DeVry graduates, the 90% Representation, for the guidance of others, including Plaintiffs herein, representing to Plaintiffs that said facts were true.

231. In the course of their business, Defendants also represented that DeVry graduates would earn more money than graduates of other colleges and universities, with statements such as "An education that pays" and "One year after graduation, DeVry University grads report earning 15% more than median earnings reported by all other bachelor's degree graduates"—the Higher Earnings Representation. The representation was made for the guidance of others, including Plaintiffs herein, representing to Plaintiffs that said facts were true.

232. Although Defendants may claim to have believed that the 90% Representation and Higher Earnings Representation were true, Defendants had no reasonable grounds for believing the 90% Representation and Higher Earnings Representation were true when these representations were made.

233. Defendants intended that Plaintiffs rely on the 90% Representation and Higher Earnings Representation in deciding to purchase educational products and services from DeVry, and/or to continue their studies with DeVry through graduation.

234. Plaintiffs justifiably relied on Defendants' representations in deciding to purchase educational products and services from DeVry, and/or to continue their studies with DeVry

148

through graduation.

235.    Plaintiffs did not obtain employment or a career in their field of study within six months of graduation, and Defendants' negligent misrepresentations proximately caused Plaintiffs' injuries and damages.

236.    Plaintiffs' reliance on Defendants' 90% Representation and Higher Earnings Representation in deciding to purchase educational products and services from DeVry, and/or to continue their studies with DeVry through graduation, was a substantial factor in causing Plaintiffs' harm, as Plaintiffs were induced to enroll at DeVry institutions and pay tuition and other associated costs of attending DeVry, and suffered lost opportunity costs as a result of attending DeVry.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT
### (Cal. Civ. Code § 1750, *et seq.*)

237.    Plaintiffs incorporate paragraphs 1 through 236 of this Complaint as though fully alleged herein.

238.    California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." CAL. CIV. CODE § 1760.

239.    Plaintiffs purchased educational goods and services from DeVry, as defined in Cal. Civ. Code § 1761(a).

240.    Plaintiffs are "consumers" as that term is defined by the CLRA in Cal Civ. Code 1761(d), because they purchased educational goods and services from DeVry for "personal, family or household purposes." CAL. CIV. CODE § 1761 (d).

241.    Defendants' actions, representations, and conduct violated the CLRA because they extend to transactions that intended to result, and which have resulted in, the sale of educational goods and services to consumers—Plaintiffs herein.

242.    As detailed above, Defendants misrepresented the benefits of obtaining a degree

149

from DeVry in advertising, marketing, or other promotion of educational products and services. Defendants' 90% Representation and Higher Earnings Representation, made through various means such as television, internet webpages, YouTube, brochures, radio, print advertisements, and in person by Defendants' employees, agents and/or representatives, were false, misleading, and deceptive.

243. Plaintiffs reasonably relied on Defendants' representations in deciding to enroll in and to continue their studies at DeVry through graduation. Plaintiffs did not obtain employment or a career in their field of study within six months of graduation, despite diligent efforts to secure post-graduation employment within their field of study.

244. California Civil Code §§1770(a)(5) prohibits "[R]epresenting that... services have characteristics... benefits... which they do not have...." Defendants have violated this provision by advertising employment statistics and income rates of DeVry graduates which were false, not true, or inaccurate.

245. The facts concealed, omitted and misrepresented by Defendants are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the educational goods and services. Had Plaintiffs known the truth about Defendants' 90% Representation and Higher Earnings Representation, they would not have purchased educational goods and services from Defendants.

246. Plaintiffs have suffered injury in fact and actual damages resulting from Defendants' material omissions and misrepresentations because they were induced to enroll at DeVry institutions and pay tuition and associated costs of attending DeVry.

247. Prior to the filing of this Complaint, a notice letter was served on Defendants for each Plaintiff in compliance with California Civil Code §1782(a). Plaintiffs sent Defendants letters via certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and must correct, repair, replace or otherwise rectify the violations of §1770. As of the date of this filing, Defendants failed to remedy these violations.

248. Pursuant to Civil Code §1780(a), Plaintiffs seek and are entitled to actual

damages, including lost opportunity costs, restitution of property, punitive damages, attorney's fees and costs.

**FIFTH CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**

**(Cal. Bus. & Prof. Code § 17200, *et seq.*)**

**249.**   Plaintiffs incorporate paragraphs 1 through 248 of this Complaint as though fully alleged herein.

**250.**   The California Unfair Competition Law ("UCL") provides in pertinent part that: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising…"

*A. "Unlawful" Prong*

**251.**   Defendants' business practices, described herein violated the "unlawful" prong of the UCL by violating the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; the California False Advertising Law, Cal Civ. Code §§ 17500, *et seq.*; the California Postsecondary Education Act of 2009, Cal. Education Code §§ 94700, *et seq.*; and other applicable laws, as described herein.

*B. "Unfair" Prong*

**252.**   Defendants' business practices described herein violated the "unfair" prong of the UCL in that the conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits. Defendants' 90% Representation and Higher Earnings Representation are of no benefit to consumers.

*C. "Fraudulent" Prong*

**253.**   Defendants violated the "fraudulent" prong of the UCL by misrepresenting to Plaintiffs the benefits of obtaining a degree from DeVry in advertising, marketing, or other promotion of educational products and services, where the 90% Representation and Higher Earnings Representation were false, misleading, and deceptive, as detailed herein.

**254.**   Plaintiffs acted reasonably when they relied on Defendants' misrepresentations in purchasing the educational goods and services—reasonably believing Defendants' 90% Representation and Higher Earnings Representation were true and lawful.

**255.**   Plaintiffs lost money or property as a result of Defendants' UCL violations because Plaintiffs would not have purchased the educational goods and services absent Defendants' illegal conduct as set forth herein, or if the true facts were known concerning Defendants' representations, and did not acquire employment within their field of study within six months of graduation.

**256.**   As a result of Defendants' conduct as set forth above, Plaintiffs are entitled to monetary relief.[22]

<u>**SIXTH CAUSE OF ACTION**</u>

**VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW**

**(Cal. Bus. & Prof. Code § 17500, *et seq.*)**

**257.**   Plaintiffs incorporate paragraphs 1 through 256 of this Complaint as though fully alleged herein.

**258.**   Under the FAL, the State of California makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state .... in any *advertising* device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." CAL. BUS. & PROF. CODE § 17500.

**259.**   Defendants engaged in a marketing scheme whereby they misrepresented the

---

[22] Plaintiffs are not requesting injunctive relief, under the California Business and Professions Code, to restrain such future acts of unfair competition by Defendants, as Defendants have already been enjoined from engaging in the very same unfair competition practices complained of herein pursuant to the terms of a settlement agreement reached with the Federal Trade Commission. *See Federal Trade Commission v. DeVry Education Group, Inc., et al.,* Case No. 2:16-cv-579, C.D. Cal., filed January 27, 2016 (the "FTC case").

benefits of obtaining a degree from DeVry in advertising, marketing, or other promotion of educational products and services. The advertising, marketing, or other promotion included the 90% Representation, conveying the false or inaccurate message that 90% of DeVry graduates obtained careers in their field within six months of graduation. Defendants also misrepresented that DeVry graduates would earn more money than graduates of other universities.

260.   These representations were made through various means such as television, internet webpages, YouTube, brochures, print advertisements, emails, radio ads and in person by Defendants' employees, agents, and/or representatives.

261.   Defendant's *advertisements* were made in California and within this federal district, and come within the definition of *advertising* as contained in Bus. & Prof Code §§ 17500, *et seq*. in that the 90% Representation and Higher Earnings Representation were intended to induce Plaintiffs to purchase educational goods and services. Defendants knew the conduct was unauthorized, inaccurate, and misleading.

262.   Defendants violated California law, as set forth herein, because the 90% Representation and the Higher Earnings Representation, among other problems, are intentionally premised on flawed methodologies, whereby Defendants' data miscounts at least three categories of graduates for the 90% Representation  and is based on unreliable sampling and methodology for the Higher Earnings Representation.

263.   Defendants violated the FAL by misleading Plaintiffs in misrepresenting the benefits of obtaining a degree from DeVry, as described herein.

264.   Defendants knew or should have known, through the exercise of reasonable care that the 90% Representation and Higher Earnings Representation were untrue and misleading.

265.   Plaintiffs lost money or property as a result of Defendant's FAL violations because they would not have purchased educational goods and services from Defendants absent Defendants' illegal conduct as set forth herein, or if the true facts were known concerning Defendants' representations, and they did not obtain employment within their field of study within six of months of graduation.

**266.**    Plaintiffs are therefore entitled to monetary relief.[23]

### SEVENTH CAUSE OF ACTION

### EXEMPLARY DAMAGES

### (Cal. Civ. Code § 3294)

**267.**    Plaintiffs incorporate paragraphs 1 through 266 of this Complaint as though fully alleged herein.

**268.**    In their deceptive marketing scheme, Defendants perpetrated "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving [Plaintiffs] of property or legal rights or otherwise causing injury," as set forth herein. CAL. CIV. CODE 3294(c)(3).

**269.**    Defendants' conduct was oppressive and outrageous.

**270.**    Plaintiffs are thus entitled to punitive damages. Cal. Civ. Code § 3294.

### DEMAND FOR JURY TRIAL

**271.**    In accordance with Fed. R. Civ. P. 38, Plaintiffs demand a trial by jury on all issues.

### PRAYER FOR RELIEF

Therefore, Plaintiffs respectfully request that Defendants be cited to appear and answer, and that on final hearing, Plaintiffs have:

   a. Restitution;

   b. Economic damages, including lost opportunity costs;

   d. Punitive damages;

   e. Attorney's fees through entry of final judgment in this action;

   f. Prejudgment and post-judgment interest;

---

[23] Plaintiffs in are not requesting injunctive relief under the California Business and Professions Code to restrain such future acts of unfair competition by Defendants as Defendants have already been enjoined from engaging in the very same unfair competition practices complained of herein, pursuant to the terms of a settlement agreement reached with the Federal Trade Commission. *See Federal Trade Commission v. DeVry Education Group, Inc., et al.,* Case No. 2:16-cv-579, C.D. Cal., filed January 27, 2016 (the "FTC case").

g. Costs of this suit; and

h. Any other relief that the Court finds proper.

Dated: July 27, 2020                     Respectfully submitted,

                                         **THE CARLSON LAW FIRM, P.C.**
                                         1717 N. Interstate Highway 35, Suite 305
                                         Round Rock, Texas 78664
                                         Phone: (512) 671-7277
                                         Fax:    (512) 238-0275

                                         By:    /s/ John R. Fabry
                                                **JOHN R. FABRY, OF COUNSEL**
                                                *Pro Hac Vice*
                                                JFabry@carlsonattorneys.com

                                                **LUIS MUNOZ**
                                                *Pro Hac Vice*
                                                LMunoz@carlsonattorneys.com

                                         **MOSS BOLLINGER, LLP**
                                         15300 Ventura Blvd., Ste. 207
                                         Sherman Oaks, California 91403
                                         Phone: (310) 982-2984
                                         Fax: (818) 963-5954

                                         By:    /s/ Ari Moss
                                                **ARI MOSS**
                                                State Bar No. 238579
                                                ari@mossbollinger.com

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury to the extent authorized by law.

Dated: July 27, 2020                     Respectfully submitted,

                                         **THE CARLSON LAW FIRM, P.C.**
                                         1717 N. Interstate Highway 35, Suite 305
                                         Round Rock, Texas 78664
                                         Phone: (512) 671-7277
                                         Fax:    (512) 238-0275

                                         By:    /s/ John R. Fabry
                                                **JOHN R. FABRY, OF COUNSEL**
                                                *Pro Hac Vice*
                                                JFabry@carlsonattorneys.com

SECOND AMENDED COMPLAINT FOR DAMAGES                    4:19-CV-04079-JSW

1

**LUIS MUNOZ**
*Pro Hac Vice*
LMunoz@carlsonattorneys.com

2

3

**MOSS BOLLINGER, LLP**
15300 Ventura Blvd., Ste. 207
Sherman Oaks, California 91403
Phone: (310) 982-2984
Fax: (818) 963-5954

4

5

6

By:      /s/ Ari Moss
**ARI MOSS**
State Bar No. 238579
ari@mossbollinger.com

7

8

9

10

11

12

13

14

15

**CERTIFICATE OF SERVICE**

16      I hereby certify that a true and correct copy of the above and foregoing document was filed

17   and served electronically through the Court's CM/ECF system on July 27, 2020 upon the following

18   counsel of record:

19

20   **TERANCE A. GONSALVES**
**ALSTON & BIRD, LLP**
1201 W. Peachtree Street
21   Suite 4900
Atlanta, Georgia 30309
22   Phone: (404) 881-7983
Fax: (404) 881-7777
23   terance.gonsalves@alston.com

24   **JARED SLADE**
**ALSTON & BIRD, LLP**
25   2200 Ross Ave.
Suite 2300
26   Dallas, Texas 75201
Phone: (214) 922-3424
27   jared.slade@alston.com

28

156

1   **STEVEN ANDREW ERKEL**
    **ALSTON & BIRD, LLP**
2   560 Mission Street
    Suite 2100
3   San Francisco, California 94105
    Phone: (415) 243-1000
4   Fax: (415) 243-1001
    steven.erkel@alston.com
5
    **PATRICIA B. PALACIOS**
6   **LISA M. SOUTHERLAND**
    **STEPTOE & JOHNSON LLP**
7   1330 Connecticut Ave. N.W.
    Washington, D.C. 20036
8   Phone: (202) 429-3000
    Fax: (202) 429-3902
9   ppalacios@Steptoe.com
    lsoutherland@steptoe.com
10
11  **WILLIAM R. ANDRICHIK**
    **STEPTOE & JOHNSON LLP**
12  227 West Monroe Street, Ste. 4700
    Chicago, Illinois 60606
13  Phone: (312) 577-1273
    Fax: (312) 577-1370
14  wandrichik@Steptoe.com
15
    **LAURIE EDELSTEIN**
16  **STEPTOE & JOHNSON LLP**
    One Market Street
17  Spear Tower, Ste. 3900
    San Francisco, CA 94105
18  Phone: (415) 365-6700
    Fax: (415) 365-6699
19  ledelstein@Steptoe.com
20
    **COUNSEL FOR DEFENDANTS**
21
22                                          /s/ John R. Fabry
                                            **JOHN R. FABRY, OF COUNSEL**
23
24
25
26
27
28
                                    157